## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **BACKERTOP LICENSING LLC,** | |
| **Plaintiff,** | **CIVIL ACTION NO.: 1:22-cv-572-CFC** |
| **v.** | **JURY TRIAL DEMANDED** |
| **CANARY CONNECT, INC.,** | |
| **Defendant.** | |

## PLAINTIFF BACKERTOP LICENSING LLC'S OPPOSITION TO DEFENDANT CANARY CONNECT, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

August 23, 2022

OF COUNSEL

Ronald Burns (*pro hac vice anticipated*)
Fresh IP PLC
5999 Custer Road, Suite 110-507
Frisco, Texas 75035
(972) 632-9009
ron@freship.com

CHONG LAW FIRM PA

Jimmy Chong (#4839)
2961 Centerville Road, Suite 350
Wilmington, DE 19808
Telephone: (302) 999-9480
Facsimile: (302) 800-1999
Email: patent@chonglawfirm.com

*Attorney for Plaintiff Backertop Licensing LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS ........................................................................ i

TABLE OF CITATIONS  ..................................................................... ii

I.  SUMMARY OF THE ARGUMENT ...............................................1

II.  CONCISE STATEMENT OF THE FACTS ....................................3

III.  STATEMENT OF THE LAW .........................................................6

IV.  ARGUMENT...................................................................................8

    A.  The Patent Claims Are Not Properly Lumped Together Under Claim 1 of the '385 Patent ....................................................10

    B.  The '385 Patent Claims are Eligible Under §101 ...............11

        1.  Claim 1 of the '385 Patent Does Not Recite an Abstract Idea..........................................................................12

        2.  Claim 1 of the '385 Patent Has Material, Non-Generic Limitations, Including "Wherien the message specifies at least one application to be disabled while the mobile device is present at the physical location." ............................15

    C.  The '617 Patent Claims are Eligible Under §101 ...............17

        1.  Claim 1 of the '617 Patent Does Not Recite an Abstract Idea..........................................................................19

        2.  Claim 1 of the '617 Patent Has Material, Non-Generic Limitations, Including "Wherien the message specifies at least one application to be disabled while the mobile device is present at the physical location." ............................22

    D.  The Motion Itself Is Evidence That Claim Construction is Required to Decide Eligibility Under §101 .........................24

CONCLUSION ..................................................................................................25

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed.Cir. 2018) ........................................................................8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208, 134 S.Ct. 2347 (2014) ............................................ 7, 9, 16, 23

*Bascom Global Internet Serv. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed.Cir. 2016) ................................................ 8, 9, 17, 21, 24

*Cellspin Soft, Inc. v. Fitbit*, Inc.,
   927 F.3d 1306 (Fed.Cir. 2019) ........................................................................6

*Commil USA, LLC v. Cisco Sys.*,
   135 S.Ct. 1920 (2015)......................................................................................6

*Data Engines Techs. LLC v. Google LLC*,
   906 F.3d 999 (Fed.Cir. 2018) .................................................... 14, 15, 21, 22

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245, 1257 (Fed.Cir. 2014) ................................................ 7, 17, 24

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed.Cir. 2016) ........................................................... passim

*Finjan, Inc. v. Blue Coat Sys.*,
   879 F.3d 1299 (Fed.Cir. 2018) ............................................................. 15, 22

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
   2019 U.S. App. LEXIS 34075 (Fed.Cir. Nov. 15, 2019) ....... 7, 13, 15, 20, 22

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
   132 S.Ct. 1289 (2012)...................................................................................7, 9

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed.Cir. 2016) ........................................ 8, 10, 15, 17, 20, 22

*Microsoft Corp. v. i4i Ltd. P'ship*,
   131 S.Ct. 2238 (2011)......................................................................................6

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed.Cir. 2017) ............................................. 6, 14, 15, 20, 22

**Statutes**

35 U.S.C. §101 ...................................................................... passim

35 U.S.C. §112 ......................................................................... 15, 21

35 U.S.C. §282 ...............................................................................6

**Rules**

Rule 12(b)(6), Fed.R.Civ.P. .................................................... 1, 8

Plaintiff Backertop Licensing LLC ("Backertop") files this Opposition to Defendant Canary Connect, Inc.'s ("Canary") Motion to Dismiss for Failure to State a Claim (D.I. 9, 10) ("Motion").

## I.    SUMMARY OF THE ARGUMENT

Canary's Motion improperly argues for dismissal pursuant to Rule 12(b)(6), based upon an erroneous assertion of a representative claim, and a faulty and inaccurate oversimplification of the actual claim requirements. The Motion builds upon these fundamentally flawed contentions to present an invalid line of reasoning that fails to adequately support its desired result. The Motion erroneously asserts that: 1) claim 1 of U.S. Patent No. 9,332,385 ("the '385 patent") is representative of all claims of both patents in suit – the '385 patent and U.S. Patent No. 9,654,617 ("the '617 patent"); 2) claim 1 of the '385 patent is directed to abstract ideas under 35 U.S.C. §101 ("§101"); 3) claim 1 adds nothing inventive; and 4) this matter can be decided without claim construction. The Motion fails to provide proper support for any of these contentions.

Backertop's original complaint (D.I. 1) ("Complaint") asserts independent claims 1 and 8 of the '385 patent, and independent claim 1 of the '617 patent. Each of these asserted claims are distinct, and none are directed to an abstract idea. Instead, they affirmatively recite structural elements and interoperative communications between those elements. Those recitations require operations and

communications that cannot be performed without the required structural elements, and are not simply computer automated human tasks. They are, by definition, not abstract. Even if the required elements were somehow considered abstract, there are a number of inventive concepts within those required elements that render the claims patent eligible.

The only possible way that the Motion can twist the actual language of the claims of the asserted patents to render them patent ineligible is to misconstrue them … by rendering its own oversimplified and defective interpretations of the elements to achieve its desired comparison with patents in prior case law.[1] In so doing, the Motion contradicts its own argument that this matter can be resolved without claim construction.[2] The Motion creates its own improper constructions on the one hand, and then disingenuously claims construction is not necessary on the other hand.

As explained below, proper consideration of the literal and actual required claim elements defeats the Motion's arguments about §101 eligibility. If any interpretation of a claim element is required, that indicates that claim construction is necessary and appropriate before considering eligibility under §101.

Canary also attempts to surreptitiously pull two other patents owned by

---

[1] *See, e.g.*, Motion at pp.3, 6-13, 17-18.
[2] *Id* at pp.18-19.

Backertop under the umbrella of the Motion, without bringing them to the direct attention of this Court in a proper form. Buried within a footnote, the Motion improperly attempts to adjudicate the patent eligibility of two other patents – not under consideration by this Court – based upon the bald assertion that those two patents "cover the same fundamental elements in their claims, and they can therefore be treated together for purposes of this analysis."[3] Plaintiff objects to this underhanded attempt to adjudicate matters not properly placed before this Court. There are only two patents in suit, and the scope of this Motion – and any decision upon this Motion – should only address those patents. Plaintiff respectfully requests that any decision from this Court – specifically and explicitly – rejects Canary's attempted duplicity.

All claims of the '385 and '617 patents are directed to patent eligible subject matter under §101. As established, hereinafter, fact disputes on inventive concepts, and matters of claim interpretation, prevent ruling on patent eligibility at this stage of this litigation.

For these reasons, this Court should DENY the Motion.

## II.    CONCISE STATEMENT OF THE FACTS

The patents in suit – the '385 patent and the '617 patent – relate generally to the field of wireless communication vis-à-vis a mobile device, and to efficiently

---

[3] *Id* at p.2, n.1

providing network services to the mobile device. ('385 patent at Abstract; col. 1; '617 patent at Abstract; col. 1).

The specifications of the '385 and '617 patents ("Specifications") disclose a number of disadvantages with previous approaches to providing efficient network services to mobile devices. The Specifications disclose that mobile device users typically spend more time using mobile applications to access web based content than they spend using web browsers – a disparity that has grown over the years. As disclosed in the Specifications, that disparity was due (at least in part) to the fact that a well-designed mobile application typically delivered a superior user experience when compared to a web browser. ('385 patent at col. 1:9-27; '617 patent at col. 1:12-27).

With respect to this issue, the Specifications disclose that mobile applications are much like desktop software – in that they can store content resources locally – whereas a web browser must retrieve all content data from a web server. In the context of a mobile device application, interface controls of an application operate without the lag time and overhead typically associated with web browser interface controls. *Id*. Thus, using web browsers to access application based content is inferior to access via an actual application – web browser based access is simply slower than application based access. Improved access speed via applications does come at a cost, and that is the local storage of content resources.

4

Of further significance is the fact that mobile applications can selectively access functional features and operations of a mobile device, which may not be possible for a website being accessed via a web browser.

Thereafter, the Specifications disclose a number of inventive embodiments for providing more efficient application-driven network and content access to a mobile device, in general, and  more efficient application-driven mobile device access to a network (and content) maintained in relation to a physical location. In certain embodiments, the mobile device's proximity to, or presence at, the physical location may trigger selective enablement or disablement of applications on the mobile device in order to facilitate more efficient access to the network or its content. ('385 patent at col. 3:57 – col. 4:49; '617 patent at col. 3:31 – col. 4:22 ).

Although the Motion attempts – inaccurately and disingenuously – to paint the inventions of the '385 and '617 patents as three highly oversimplified steps,[4] the claims of the '385 and '617 patents actually recite numerous elements and limitations that provide new ways of authorizing network access for a mobile device. Those elements and limitations require:

- wireless communication between a mobile device and at least one beacon;

- identifying a present physical location of the mobile device based upon wireless communication between the beacon and the mobile

---

[4] *See* Motion at pp.3, 6.

device;

- in response to determining that the mobile device is located at a particular physical location, communicating a first message to the mobile device;

- wherein the message specifies at least one application to be disabled while the mobile device is present at the physical location;

- the mobile device responds to that first message by indicating that the at least one application is disabled; and

- based upon the mobile device's response to the first message, authorizing the mobile device's connection to a network maintained for the physical location.

('385 patent at Figs. 2, 4, 5; claims 1, 8; '617 patent at Figs. 2, 4, 5; claim 1).

## III.   STATEMENT OF THE LAW

Defendant's statement of the law glaringly omits that a patent is presumptively valid and patent eligible under 35 U.S.C. §101. *Cellspin Soft, Inc. v. Fitbit*, Inc., 927 F.3d 1306, 1319 (Fed.Cir. 2019). The burden of establishing invalidity of any patent claim rests on Defendant. 35 U.S.C. §282; *Microsoft Corp. v. i4i Ltd.*, 131 S.Ct. 2238, 2245 (2011); *Commil USA, LLC v. Cisco Sys.*, 135 S.Ct. 1920, 1929 (2015). On "a motion to dismiss under Rule 12(b)(6), [ ] all factual inferences drawn from the specification [of the patent] must be weighed in favor of [ ] the non-moving party." *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261-62 (Fed.Cir. 2017).

Section 101 defines patent eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful

improvement thereof." 35 U.S.C. §101. Analysis of patent eligibility under §101 consists of two steps. *Mayo Collaborative Serv. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1296-1297 (2012). The first step "determine[s] whether *the claims* at issue are directed to one of those patent-ineligible concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 134 S.Ct. 2347, 2355 (2014)(emphasis added). If the Court finds that the claims at issue are directed to a patent eligible concept, then the analysis stops.

If the claims at issue are not directed to a patent eligible concept, and fail step one, the second step requires that the Court examine the elements of the claims, individually *and* as an ordered combination, in order "to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S.Ct. at 2357 (*citing Mayo*, 132 S.Ct. at 1294, 1298). Thus, even if an invention recites an abstract idea, the invention is still patentable if it has "additional features to ensure that the claim is more than drafted to monopolize the abstract idea." *Id.* (*citing Mayo*, 132 S.Ct. at 1297).

Software claims are not abstract if "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed.Cir. 2014); *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 2019 U.S. App. LEXIS 34075 (Fed.Cir. Nov. 15, 2019). Even if claims use generic

computers, software claims *are patent-eligible* if they do not preempt the abstract idea of generic computer parts performing conventional activities. *Bascom Global Internet Serv. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350-51 (Fed.Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed.Cir. 2016). So long as the novelty is not simply using a computer, claims to "processes that automate tasks that humans are capable of performing are patent eligible if properly claimed." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed.Cir. 2016).

Importantly, patent eligibility under §101 is a question of law that can have subsidiary fact questions that must be resolved en route to the ultimate legal determination. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed.Cir. 2018). For example, whether claim elements or claimed combination are well understood, routine, or conventional is a fact question. *Id.*

## IV.   ARGUMENT

When all factual inferences are weighed in Backertop's favor, Defendant has not overcome the presumption that the '385 and '617 patent claims ("Patent Claims") are eligible under §101. As previously noted, the Motion inaccurately and disingenuously oversimplifies the structures and operations of the Patent Claims. In more than one instance, the Motion attempts to characterize inventive concepts as abstract, even though those inventive concepts are stated with specificity in the

Patent Claims.

Inventive concepts that are stated with specificity are not abstract ideas. Claims that recite structural and device limitations, and require wireless operational intercommunications between devices and structures, with the specificity of the Patent Claims are not abstract ideas.

With respect to the second step of §101 analysis, the Motion falsely asserts that the Patent Claims add nothing inventive. Here, once again, the Motion improperly oversimplifies the Patent Claims, and then improperly breaks them down into a fictitious shopping list against which the Motion argues. This is not proper analysis. This does not focus on the claims and claim elements as an ordered combination. *Alice*, 134 S.Ct. at 2357 (*citing Mayo*, 132 S.Ct. at 1294, 1298).

The asserted Patent Claims recite a new way of authorizing network access for a mobile device on a location-specific network in a more efficient manner than previous solutions. This is not an activity "humans have always performed" – the Motion's unsupported assertions notwithstanding.[5] The Patent Claims do not preempt or monopolize the abstract idea of generic computer parts performing conventional activities, and their novelty is not simply using a computer to automate human capable tasks. *Bascom*, 827 F.3d at 1350-51; *Enfish,* 822 F.3d at

---

[5] *See* Motion at p.8.

1338; *McRO*, 837 F.3d at 1313.

Canary's Motion should therefore be DENIED.

### A.     The Patent Claims Are Not Properly Lumped Together Under Claim 1 of the '385 Patent.

The Motion incorrectly lumps all Patent Claims together with claim 1 of the '385 Patent – providing its own erroneous assertion of the content of the Patent Claims as the basis.[6] The Motion makes no real attempt to explain why claim 1 of the '385 patent is representative of all Patent Claims – other than to rehash its oversimplified, and inaccurate, characterization of the "functional concepts" of the claims.[7]

Plaintiff disputes the Motion's characterization of the "functional concepts" of the Patent Claims. These cursory arguments as to the content of the other Patent Claims fail to satisfy the Motion's burden of showing claim 1 of the '385 Patent to be representative of all Patent Claims.

The Patent Claims do have some overlap in their inventive concepts. However, claim 8 of the '385 patent and claim 1 of the '617 patent require limitations that differentiate those claims from claim 1 of the '385 patent. These

---

[6] *See* Motion at pp.6-7 ("each of the asserted claims includes the same functional concepts: identifying the physical location of a mobile device; having the system request that the mobile device disable at least one mobile application; and authorizing the mobile device's presence on a network.")

[7] *Id.* at p. 7.

differentiations are not inconsequential, as they recite additional structural limitations that related to improvements over prior systems.

**B.    The '385 Patent Claims are Eligible Under §101.**

The claims of the '385 patent are directed to a new way of authorizing network access for a mobile device on a location-specific network in an operationally more efficient manner than previous solutions – requiring: wireless communication between the mobile device and a physical location beacon; a wireless message to the mobile device specifying a mobile device application to be disabled while the mobile device is present at the physical location; a wireless response message from the mobile device that the application is disabled; and authorizing the mobile device's connection to the location-specific network. This stands in stark contrast, and direct rebuttal, to the Motion's assertion that the claims of the '385 patent are directed to "a person showing up to at a location, complying with the location's rules, and then being provided service."[8] The '385 patent claims are substantially more than an abstract idea of generic computer parts performing conventional activities, and are not limited to using a computer to automate human capable tasks.

Even if this Court somehow finds that the '385 Patent claims are directed to an abstract idea, those claims have a number of limitations that are inventive

---

[8] *Id.* at p.6.

concepts. For example, the Motion makes only cursory references to, and glosses over, the recitation of the "first message specifying at least one application to be disabled while the mobile device is present at the physical location." This limitation is a patent eligible inventive concept that defeats the Motion. The Motion's oversimplifications purposefully gloss over and improperly modify that limitation, repeatedly.[9]

The claims of the '385 patent are patent eligible under §101.

### 1.     Claim 1 of the '385 Patent Does Not Recite an Abstract Idea.

As already noted, the Motion oversimplifies claim 1 of the '385 patent by contending that the claim is directed to the abstract idea of "complying with a location's rules and in return being given service."[10] This attempt to mischaracterize claim 1 as an abstract idea glosses over important aspects of the claim, and does not address the problems of: *efficiently* providing application-driven mobile device access to a network and content; or of selective enablement or disablement of applications on the mobile device in order to facilitate more efficient access. *Enfish*, 822 F.3d at 1337.

First, claim 1 requires communicating a first message to a mobile device, which specifies at least one application to be disabled while the mobile device is

---

[9] *Id* at pp. 1, 3, 7.
[10] *Id* at p. 7.

present at the physical location. ('385 patent at col. 15:35-38). Claim 1 also requires a response to the first message from the mobile device indicating that an application is disabled, and then authorizing access to the network for the mobile device. (*Id.* at col. 15:39-44). The specification of the '385 Patent teaches that mobile applications are software that can store resources locally (i.e., on the mobile device), have interface controls, and can selectively access functional features and operations of a mobile device. (*Id.* at col. 1:19-26). The specification of the '385 Patent *specifically teaches* that mobile applications are specifically configured to be executed by a processor of a mobile device. (*Id.* at col. 2:66-67).

Claim 1 of the '385 patent "do[es] not, simply recite, without more, the mere desired result of" providing access content, "but rather recite[s] a specific solution for accomplishing that goal." *Koninklijke*, 2019 U.S.App. 34075, *19. Claim 1 "sufficiently capture[s] the inventors' asserted technical contribution to the prior art by reciting how the solution specifically improves the function of prior art [ ] systems." *Id*.

The Motion sophomorically attempts to analogize claim 1 to showing up at a library and being required to turn down music before the librarian grants access to the library content.[11] The Federal Circuit has held that it "is not enough [ ] to merely trace the invention to some real-world analogy" where the Defendant "fails

---

[11] *Id.* at p. 8.

to appreciate the functional improvement achieved by the specifically recited [limitations] in the claimed methods." *Data Engines Techs. LLC v. Google LLC*, 906 F.3d 999, 1101 (Fed.Cir. 2018).

The invention recited in claim 1 of the '385 patent is not merely managing access to content in a particular physical location. Rather, the invention comprises messaging constructs between a mobile device and a network device, indicating an application on the mobile device that must, and is, disabled prior to network access. ('385 patent at col. 15:35-44). This claims how to solve problems of inefficient data storage and lag times in the prior art of authorizing network and content access, not a result. *Visual Memory*, 867 F.3d at 1259; *Bascom*, 827 F.3d at 1350 ("Filtering content on the Internet was already a known concept, and the patent describes how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content.").

The Motion next attacks the claims and specification by inappropriately alleging that the invention is only described in general terms, "without specifying any particular way to" implement the claim elements.[12]   The Federal Circuit has rejected this irrelevant attack by holding that "whether a patent specification teaches an ordinarily skilled artisan how to implement the claimed invention

---

[12]  *Id*. at p.12.

presents an enablement issue under 35 U.S.C. §112, not an eligibility issue under § 101." *Visual Memory*, 867 F.3d at 1261.

When reviewing a Rule 12(b)(6) motion, it is *improper* to assume that the disclosures in the specification do not teach an ordinary skilled artisan how to implement the invention. *Id*.  The "implementation details [of the invention] may well fall within the routine knowledge of one of ordinary skill in the art, and a patent need not teach, and preferably omits, what is well known in the art." *Id*. (internal quotes removed); *see* also *Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1305 (Fed.Cir. 2018). The Federal Circuit has further specifically rejected arguments that claims "do not sufficiently describe how to implement the idea." *Id.* The technical detail in the asserted claims is on par with the level of detail in claims held by the Federal Circuit to be patent eligible. *See Finjan*, 879 F.3d at 1303; *Visual Memory*, 867 F.3d at 1257; *McRO*, 837 F.3d at 1307-8; *Data Engines*, 906 F.3d at 1006; *Koninklijke*, 2019 U.S. App. LEXIS 34075, *10.

Claim 1 of the '385 patent is similar to those in *Enfish* and *Visual Memory* because the claim has limitations that the specification contends improve the efficiency of establishing the presence of a mobile device on a network. Claim 1 does not recite an abstract idea. The Motion's improper attempts to mischaracterize claim 1 fail to support the Motion's contentions to the contrary.

2.      **Claim 1 of the '385 Patent Has Material, Non-Generic Limitations, Including "Wherein the message**

**specifies at least one application to be disabled while
the mobile device is present at the physical location."**

Even if this Court somehow finds that the Motion's alleged abstract idea is applicable to claim 1 of the '385 patent, claim 1 is nevertheless patent eligible under the second step of the *Alice* analysis. The second step of §101 analysis "examine[s] the elements of the claim [individually and as an ordered combination] to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S.Ct. at 2357.

Claim 1 of the '385 patent is not monopolizing the abstract idea of "managing access to content based on a device's location."[13] As explained in the specification, and above, conventional methods of establishing a mobile device access upon a network, had significant limitations both in terms of lag times and storage volumes. (the '385 patent at col. 1:9-27, col. 3:57 – col. 4:49). Claim 1 requires a wireless message to a mobile device specifying a mobile device application to be disabled while the mobile device is present at a physical location; a wireless response message from the mobile device that the application is disabled; and authorizing the mobile device's connection to the location-specific network.

---

[13] *Id.* at p.1.

The Motion contends that claim 1 is unpatentable because it can work on general-purpose computers. The fact that the invention can run on a general-purpose computer does not "doom[ ] the claims" because the claims "are directed to an improvement in the functioning of a computer." *Enfish*, 822 F.3d at 1338; *also Bascom*, 827 F.3d at 1350-51. Claim 1 is *not* a situation in which "general-purpose computer components are added post-hoc to a fundamental economic practice or mathematical equation." *Enfish*, 822 F.3d at 1339. Instead, this invention is one that can only exist on computers because it is an improvement to the efficiency and scalability of responding to requests for access to a network and network content.

Furthermore, the required steps of Claim 1 are unconventional in light of previous systems. Claim 1's material, non-generic limitations show an inventive concept that does not monopolizing the abstract idea of "managing access to content in a particular physical location." *See DDR Holdings,* 773 F.3d at 1259; *McRO*, 837 F.3d at 1315.

Claim 1 of the '385 patent has material, non-generic limitations that differentiate over previous systems.

### C.    The '671 Patent Claims are Eligible Under §101.

The claims of the '617 patent are directed to a new way of authorizing network access for a mobile device on a location-specific network in an

operationally more efficient manner than previous solutions – requiring: wireless communication between the mobile device and a physical location beacon; a wireless message to the mobile device specifying a mobile device application to be disabled while the mobile device is present at the physical location; a wireless response message from the mobile device that the application is disabled; and authorizing the mobile device's connection to the location-specific network.

To the extent that the Motion addresses the '617 patent at all – with anything more that an cursory and insufficient contention that it is represented by claim 1 of the '385 patent – this contradicts the Motion's (implied) assertion that the claims of the '617 patent are directed to "a person showing up to at a location, complying with the location's rules, and then being provided service."[14]

The '617 patent claims are substantially more than an abstract idea of generic computer parts performing conventional activities, and are not limited to using a computer to automate human capable tasks.

Even if this Court somehow finds that the '617 Patent claims are directed to an abstract idea, those claims have a number of limitations that are inventive concepts. For example, the Motion makes only cursory references to, and glosses over, the recitation of the "first message specifying at least one application to be disabled while the mobile device is present at the physical location." This

---

[14] *Id.* at p.6.

limitation is a patent eligible inventive concept that defeats the Motion. The Motion's oversimplifications purposefully gloss over and improperly modify that limitation, repeatedly.[15]

The claims of the '617 patent are patent eligible under §101.

### 1.    Claim 1 of the '617 Patent Does Not Recite an Abstract Idea.

As already noted, the Motion oversimplifies claim 1 of the '617 patent – by means of its improper and unsupported assertion that claim 1 of the '385 patent is "representative" of claim 1 of the '617 patent – with a contention that the claim is directed to the abstract idea of "complying with a location's rules and in return being given service."[16] This attempt to mischaracterize claim 1 as an abstract idea glosses over important aspects of the claim, and does not address the problems of: *efficiently* providing application-driven mobile device access to a network and content; or of selective enablement or disablement of applications on the mobile device in order to facilitate more efficient access. *Enfish*, 822 F.3d at 1337.

First, claim 1 requires communicating a first message to a mobile device, which specifies at least one application to be disabled while the mobile device is present at the physical location. ('385 patent at col. 15:35-38). Claim 1 also requires a response to the first message from the mobile device indicating that an

---

[15] *Id* at pp. 1, 3, 7.
[16] *Id* at p. 7.

application is disabled, and then authorizing access to the network for the mobile device. (*Id.* at col. 15:39-44). The specification of the '617 Patent teaches that mobile applications are software that can store resources locally (i.e., on the mobile device), have interface controls, and can selectively access functional features and operations of a mobile device. (*Id.* at col. 1:19-26). The specification of the '617 Patent *specifically teaches* that mobile applications are specifically configured to be executed by a processor of a mobile device. (*Id.* at col. 2:66-67).

Claim 1 of the '617 patent "do[es] not, simply recite, without more, the mere desired result of" providing access content, "but rather recite[s] a specific solution for accomplishing that goal." *Koninklijke*, 2019 U.S.App. 34075, *19. Claim 1 "sufficiently capture[s] the inventors' asserted technical contribution to the prior art by reciting how the solution specifically improves the function of prior art [ ] systems." *Id.*

The Motion sophomorically attempts to analogize claim 1 to showing up at a library and being required to turn down music before the librarian grants access to the library content.[17] The Federal Circuit has held that it "is not enough [ ] to merely trace the invention to some real-world analogy" where the Defendant "fails to appreciate the functional improvement achieved by the specifically recited

---

[17] *Id.* at p. 8.

[limitations] in the claimed methods." *Data Engines Techs. LLC v. Google LLC*, 906 F.3d 999, 1101 (Fed.Cir. 2018).

The invention recited in claim 1 of the '617 patent is not merely managing access to content in a particular physical location. Rather, the invention comprises messaging constructs between a mobile device and a network device, indicating an application on the mobile device that must, and is, disabled prior to network access. ('385 patent at col. 15:35-44). This claims how to solve problems of inefficient data storage and lag times in the prior art of authorizing network and content access, not a result. *Visual Memory*, 867 F.3d at 1259; *Bascom*, 827 F.3d at 1350 ("Filtering content on the Internet was already a known concept, and the patent describes how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content.").

The Motion next attacks the claims and specification by inappropriately alleging that the invention is only described in general terms, "without specifying any particular way to" implement the claim elements.[18]  The Federal Circuit has rejected this irrelevant attack by holding that "whether a patent specification teaches an ordinarily skilled artisan how to implement the claimed invention presents an enablement issue under 35 U.S.C. §112, not an eligibility issue under § 101." *Visual Memory*, 867 F.3d at 1261.

---

[18]  *Id*. at p.12.

When reviewing a Rule 12(b)(6) motion, it is *improper* to assume that the disclosures in the specification do not teach an ordinary skilled artisan how to implement the invention. *Id.* The "implementation details [of the invention] may well fall within the routine knowledge of one of ordinary skill in the art, and a patent need not teach, and preferably omits, what is well known in the art." *Id.* (internal quotes removed); *see* also *Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1305 (Fed.Cir. 2018). The Federal Circuit has further specifically rejected arguments that claims "do not sufficiently describe how to implement the idea." *Id.* The technical detail in the asserted claims is on par with the level of detail in claims held by the Federal Circuit to be patent eligible. *See Finjan*, 879 F.3d at 1303; *Visual Memory*, 867 F.3d at 1257; *McRO*, 837 F.3d at 1307-8; *Data Engines*, 906 F.3d at 1006; *Koninklijke*, 2019 U.S. App. LEXIS 34075, *10.

Claim 1 of the '617 patent is similar to those in *Enfish* and *Visual Memory* because the claim has limitations that the specification contends improve the efficiency of establishing the presence of a mobile device on a network. Claim 1 does not recite an abstract idea. The Motion's improper attempts to mischaracterize claim 1 fail to support the Motion's contentions to the contrary.

> **2.** **Claim 1 of the '617 Patent Has Material, Non-Generic Limitations, Including "Wherein the message specifies at least one application to be disabled while the mobile device is present at the physical location."**

Even if this Court somehow finds that the Motion's alleged abstract idea is

applicable to claim 1 of the '617 patent, claim 1 is nevertheless patent eligible under the second step of the *Alice* analysis. The second step of §101 analysis "examine[s] the elements of the claim [individually and as an ordered combination] to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S.Ct. at 2357.

Claim 1 of the '617 patent is not monopolizing the abstract idea of "complying with a location's rules and in return being given service."[19] As explained in the specification, and above, conventional methods of establishing a mobile device access upon a network, had significant limitations both in terms of lag times and storage volumes. (the '617 patent at col. 3:31 – col. 4:22). Claim 1 requires a wireless message to a mobile device specifying a mobile device application to be disabled while the mobile device is present at a physical location; a wireless response message from the mobile device that the application is disabled; and authorizing the mobile device's connection to the location-specific network.

The Motion contends that claim 1 is unpatentable because it can work on general-purpose computers. The fact that the invention can run on a general-purpose computer does not "doom[ ] the claims" because the claims "are directed

---

[19] *Id*. at p.1.

to an improvement in the functioning of a computer." *Enfish*, 822 F.3d at 1338; *also Bascom*, 827 F.3d at 1350-51. Claim 1 is *not* a situation in which "general-purpose computer components are added post-hoc to a fundamental economic practice or mathematical equation." *Enfish*, 822 F.3d at 1339. Instead, this invention is one that can only exist on computers because it is an improvement to the efficiency and scalability of responding to requests for access to a network and network content.

Furthermore, the required steps of Claim 1 are unconventional in light of previous systems. Claim 1's material, non-generic limitations show an inventive concept that does not monopolize the abstract idea of "complying with a location's rules and in return being given service." *See DDR Holdings,* 773 F.3d at 1259; *McRO*, 837 F.3d at 1315.

Claim 1 of the '385 patent has material, non-generic limitations that differentiate over previous systems.

### D.    The Motion Itself Is Evidence That Claim Construction is Required to Decide Eligibility Under §101.

The only possible way that the Motion can twist the actual language of the Patent Claims in order to render them patent ineligible is to oversimplify the claim language, and then render its own improper interpretations of an incomplete listing

of all elements to achieve its desired comparison with patents in prior case law.[20] In attempting to do so, the Motion contradicts its own cursory argument that this matter can be resolved without claim construction.[21]

The Motion creates its own improper constructions on the one hand, and then disingenuously claims construction is not necessary on the other hand and – in so doing – ignores essential elements and limitations recited in the claims. These facts indicate that claim construction is necessary to make any proper eligibility determination regarding the claims of the '385 and '671 patents.

Canary has not properly supported its contention that claim construction is not necessary – especially when the Motion oversimplifies and warps the actual claim language.

## CONCLUSION

For the foregoing reasons, Backertop Licensing LLC respectfully requests that this Court deny Canary's Motion.

---

[20] *Id.* at pp.3, 6-13, 17-18.
[21] *Id.* at pp.18-20.

August 23, 2022

OF COUNSEL

Ronald Burns *(pro hac vice anticipated)*
Fresh IP PLC
5999 Custer Road, Suite 110-507
Frisco, Texas 75035
(972) 632-9009
ron@freship.com

Respectfully Submitted,

CHONG LAW FIRM PA

*/s/ Jimmy Chong*
Jimmy Chong (#4839)
2961 Centerville Road, Suite 350
Wilmington, DE 19808
Telephone: (302) 999-9480
Facsimile: (302) 800-1999
Email: patent@chonglawfirm.com

*Attorney for Plaintiff Backertop Licensing LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 23, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5.

*/s/ Jimmy Chong*
Jimmy Chong (#4839)