**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **BACKERTOP LICENSING LLC,** | Civil Action No.: 1:22-cv-00572-CFC |
| Plaintiff, | |
| v. | |
| **CANARY CONNECT, LLC,** | |
| Defendant. | |
| **BACKERTOP LICENSING LLC,** | Civil Action No.: 1:22-cv-00573-CFC |
| Plaintiff, | |
| v. | |
| **AUGUST HOME, INC.,** | |
| Defendant. | |

## PLAINTIFF'S BRIEF ON MOTION TO SET ASIDE MEMORANDUM ORDER OF MARCH 31, 2023

Dated: April 3, 2023

Of counsel:

Ronald Burns (*pro hac vice*)
Fresh IP PLC
5999 Custer Road, Suite 110-507
Frisco, TX 75035
(972) 632-9009
ron@freship.com

Respectfully submitted,

CHONG LAW FIRM PA

*/s/ Jimmy Chong*
Jimmy Chong (#4839)
2961 Centerville Road, Suite 350
Wilmington, DE 19808
Telephone: (302) 999-9480
Facsimile: (302) 800-1999
Email: chong@chonglawfirm.com

ATTORNEYS FOR PLAINTIFF

## <u>TABLE OF CONTENTS</u>

**Page**

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ........................................................................... 1

II.   SUMMARY OF THE ARGUMENTS ...................................................... 2

III.  STATEMENT OF THE LAW ................................................................... 3

IV.  ARGUMENT ............................................................................................ 5

      A.    The Cases Are Dismissed and The District Court Lacks Jurisdiction to Issue the Order ............................................... 6

            The District Court has not articulated any recognized collateral issues that support the issuance and enforcement of the Order ........ 6

      B.    The Order is overly broad and seeks information that is not relevant to any issues that are collateral to the actual cases or controversies ........................................................................ 10

      C.    The Order Seeks Information that is Protected by Attorney-Client Privilege ............................................................ 13

V.   CONCLUSION ....................................................................................... 15

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963)..................................................4

*Cooter & Gell v Hartmarx Corp.,* 496 U.S. 384, 395-98 (1990)..............................................3, 7

*Dep't of Homeland Sec. v. Thuraissigiam*, 140 S.Ct. 1959, 1975 (2020)......................................9

*In re Bath & Kitchen Fixtures Antitrust Litig.*, 535 F.3d 161, 165-66 (3d Cir. 2008)...................4

*In re Grand Jury Investigation*, 918 F.2d 374, 386 n.20 (3rd Cir. 1990) (internal citations omitted) ..................................................................................................................................14

*In re Grand Jury*,

   705 F.3d 133 (3d Cir. 2012).................................................................................................14

*In re Teleglobe Commc'ns Corp.*,

   493 F.3d 345 (3d Cir. 2007).................................................................................................14

*Intellectual Ventures I LLC v. Altera Corp.*, 2013 U.S. Dist. LEXIS 206477, *16 (D.Del. July 25, 2013)...................................................................................................................................14

*Lewis v. Continental Bank Corp.*, 494 U.S. 72, 477 (1990) ........................................................11

*Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2 F.3d 544, 545, 547-48 (4th Cir. 1993)...4

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2130 n.6 (2022) .................................9

*Págan-Lisboa v. SSA*, 996 F.3d 1, 7 (1st Cir. 2021) ......................................................................9

*Rosetti v. Shalala*, 12 F.3d 1216, 1217 n.2 (3rd Cir. 1993) ........................................................11

*SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 463 (3rd Cir. 2010) .......................................3

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). ............................................8, 11

*Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) .................................................4, 13

*United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011) ......................................4, 13

*United States v. Samuels*, 808 F. 2d 1298, 1301 (CA8 1987)........................................................ 9

*United States v. Sineneng-Smith*, 590 U. S. ___, 140 S.Ct. 1575 (2020), ........................ 9, 10, 11

*United States v. Zolin*, 491 U.S. 554, 568 (1989) ..................................................... 5, 15

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ........................................................ 4, 13

**Rules**

Fed. R. Civ. P. Rule 11 .................................................................................... 3, 7, 11

Fed. R. Civ. P. Rule 26(b)(3)(A) ............................................................................ 14

**Other Authorities**

Restatement (Third) of the Law Governing Lawyers ................................................... 14

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Backertop Licensing LLC ("Backertop" or "Plaintiff") filed a Complaint for patent infringement against Canary Connect, Inc. ("Canary") on April 28, 2022. D.I. 1 (22-cv-00572-CFC). Plaintiff also filed a Complaint for patent infringement against August Home, Inc. ("August Home") – Canary and August Home collectively referred to herein as "Defendants") on the same day. D.I. 1 (22-cv-00573-CFC). Both complaints alleged infringement of U.S. Patent Nos. 9,332,385; 9,654,617; 10,477,011; and 10,728,382. D.I. 1-1.

<u>Canary</u>

On July 21, 2022, Canary filed a motion to dismiss for failure to state a claim. D.I. 9. On September 12, 2022, the Court *sua sponte* issued a Memorandum Order setting a hearing to determine if Plaintiff had complied with the Court's standing order regarding third-party litigation funding. D.I. 18. On September 14, 2022 and September 21, 2022, prior to the filing of an answer or motion for summary judgment, Plaintiff filed Notices of Dismissal under Fed. R. Civ. P. Rule 41(a)(1)(A)(i), dismissing the case without prejudice. D.I. 21-22. The Court held the evidentiary hearing on November 10, 2022, after which, on March 31, 2023, the Court entered a Memorandum Order ("the Order") requiring the production of documents and communications in both of the above-captioned cases. D.I. 25. It is this Order that is the subject of this present Motion.

1

<u>August Home</u>

On July 8, 2022, August Home filed a motion to dismiss for failure to state a claim. D.I. 9. On September 12, 2022, the Court *sua sponte* issued a Memorandum Order setting a hearing to determine if Plaintiff had complied with the Court's standing order regarding third-party litigation funding. D.I. 21. This was the same order issued in the Canary matter.  On September 14, 2022 and September 21, 2022, prior to any ruling on the motion to dismiss and prior to the filing of an answer or motion for summary judgment, Plaintiff filed Notices of Dismissal under Fed. R. Civ. P. Rule 41(a)(1)(A)(i), dismissing the case without prejudice. D.I. 24-25. The Court held the Evidentiary Hearing on November 4, 2022, after which, on March 31, 2023, the Court entered the Order requiring the production of documents and communications in both of the above-captioned cases. D.I. 28. It is this Order that is the subject of this present Motion.

## II.     SUMMARY OF THE ARGUMENTS

 Both of the above-captioned cases have been dismissed under Fed. R. Civ. P. 41(a)(1)(A)(i). Such a dismissal immediately deprives the court of jurisdiction over the merits of the case. Following a Rule 41(a) dismissal, the court only retains limited jurisdiction over a very narrow list of issues, and the Court has not articulated any recognized collateral issues that could support the issuance of the Order after the dismissal of the case. Accordingly, the Order is outside of the scope

of the Court's jurisdiction.

Additionally, the Order is overly broad because it requires the production of documents and communications that are not related to the merits of either case, are not related to any recognized collateral issues, and are inclusive of other cases that are not or were not filed in this venue and were never before this Court.

Finally, the Order requires the production of privileged documents and communications, not for the purpose of determining the merits of the claim of privilege, but for the improper purpose of investigating the Plaintiff based on the information contained therein.

## III.   STATEMENT OF THE LAW

Fed. R. Civ. P. Rule 41(a)(1)(A)(i) allows a plaintiff to voluntarily dismiss an action without a court order by filing a notice of dismissal before the opposing party serves an answer or a motion for summary judgment.  It is well established that a dismissal under Rule 41(a) immediately deprives the court of jurisdiction over the merits of the case. The district court then retains jurisdiction over a very narrow list of issues, namely, motions for costs, motions for fees, contempt sanctions, Rule 11 sanctions, and motions to confirm arbitral awards. *See e.g., Cooter & Gell v Hartmarx Corp.,* 496 U.S. 384, 395-98 (1990). *See also, SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 463 (3rd Cir. 2010) ("Because filing a voluntary stipulation of dismissal under Rule 41(a)(1)(A)(ii) is effective

3

immediately, any action by the district court after the filing of such a stipulation can have no force or effect because the matter has already been dismissed by the parties themselves without any court action."). A timely notice of voluntary dismissal invites no response from the district court and permits no interference by it. *See Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2 F.3d 544, 545, 547-48 (4th Cir. 1993) (district court may not vacate a timely filed notice of dismissal); *Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963) ("[The notice] itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court."). A proper notice deprives the district court of jurisdiction to decide the merits of the case." *In re Bath & Kitchen Fixtures Antitrust Litig.*, 535 F.3d 161, 165-66 (3d Cir. 2008).

The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." Its aim is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *United States v. Jicarilla Apache Natio*n, 564 U.S. 162, 169 (2011) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)); *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) ("The attorney client privilege is one of

the oldest recognized privileges for confidential communications.") The privilege precludes disclosure of privileged communications to any third party, including the court.  If there is a dispute as to whether a document or other communication is privileged, a court may order that the documents be produced *in camera* *solely* "for purposes of determining the merits of a claim of privilege." *United States v. Zolin*, 491 U.S. 554, 568 (1989) (emphasis added).

## IV.   ARGUMENT

The Court issued the Order following an evidentiary hearing which the Court held to address the question of whether or not the Plaintiff complied with the Court's standing order on third-party funding. (See Memorandum Order setting the original hearing, D.I. 18; D.I. 21)[1]. Although Plaintiff has fully complied with the standing order as there is no "non-recourse based funding" in either of these cases, the Plaintiff attended the hearing in a good faith attempt to satisfy the Court's concerns. At the hearing, however, the Court sought out a line of questioning regarding the Plaintiff's consultants unrelated to the sufficiency of Plaintiff's compliance with the standing order. Instead, the Court indicated that its real concerns, which it explicitly noted were raised in "parallel proceedings" (Hearing Transcript, pg. 53, lines 4-7, D.I. 24, D.I. 27), were "the integrity of our judicial system, the abuse of our courts, and potential abuse, lack of transparency as to who

---

[1] Any duel D.I. citations are presented with citations to the Canary record listed first (22-cv-00572-CFC) and the August Home record listed second (22-cv-00573-CFC).

the real parties before the Court are, about who is making decisions in these types of litigation." *See* Hearing Transcript, pg. 107, lines 14-19, 1:22-cv-00244-CFC D.I. 20. In the Order, the Court further articulated "concerns about the accuracy of statements in filings made by Plaintiff…whether there are real parties in interest such as Mavexar and IP Edge that have been hidden from the Court and Defendants, whether those real parties in interest perpetuated a fraud on the court by fraudulent conveying to a shell LLC patents asserted in this Court and filing fictitious patent assignments with the United States Patent and Trademark Office designed to shield those parties from the potential liability they would otherwise face in asserting patents in litigation in this Court….." D.I. 25, D.I. 28. For reasons that are beyond the scope of this Motion, these concerns are unfounded; however, these concerns are likewise not within the scope of the Court's authority following a Fed. R. Civ. P. Rule 41(a)(1) dismissal.

### A.   The Cases Are Dismissed and The District Court Lacks Jurisdiction to Issue the Order

<u>The District Court has not articulated any recognized collateral issues that support the issuance and enforcement of the Order</u>

The Canary matter was dismissed pursuant to notices filed September 14 and 21, 2022 (D.I. 21-22) and the August Home matter was dismissed pursuant to notices filed the same days (D.I. 25-25). Both cases were dismissed prior to the evidentiary hearing, which was held on November 10, 2022. Despite both cases

being dismissed at the time of the evidentiary hearing, Plaintiff elected to participate in the hearing in a good faith attempt to provide clarity to the record regarding the Court's standing order requests. Instead, the Court proceeded to question Plaintiff and Plaintiff's counsel on matters unrelated to the standing order question. Following the hearing, the Order was issued on March 31, 2023, directing the Plaintiff and Plaintiff's counsel to produce a laundry list of documents and communications, including retention letters and/or agreements between Plaintiff and Counsel; communications between Plaintiff and its consultants; communications between Plaintiff's counsel and Plaintiff's consultants; Plaintiff's financial information, including banking statements; and documents relating to Plaintiff's mailbox. Many of these documents and communications are privileged.

In neither the hearing nor the Order did the Court articulate any purpose for the production of these items that falls into the very narrow list of issues for which a court can retain jurisdiction following a Rule 41 notice of dismissal. In particular, the court retains jurisdiction to decide motions for costs, motions for fees, contempt sanctions, Rule 11 sanctions, and motions to confirm arbitral awards. *See e.g., Cooter & Gell v Hartmarx* 496 U.S. at 395-98. None of these issues are present or have been articulated here. To be certain, no motions have been filed for costs, fees, Rule 11 sanctions, or to confirm arbitral awards. Similarly, no issues,

allegations, or charges of contempt have been raised or discussed. Instead, the Court's only articulated concerns relate to matters outside these issues, which are therefore outside the scope of the Court's jurisdiction. The Court specifically stated its concerns are about "the integrity of our judicial system, the abuse of our courts, and potential abuse, lack of transparency as to who the real parties before the Court are, about who is making decisions in these types of litigation" (Hearing Transcript, pg. 107, 1:22-cv-00244-CFC D.I. 20) and "concerns about the accuracy of statements in filings made by Plaintiff… …whether there are real parties in interest such as Mavexar and IP Edge that have been hidden from the Court and Defendants, whether those real parties in interest perpetuated a fraud on the court by fraudulent conveying to a shell LLC patents asserted in this Court and filing fictitious patent assignments with the United States Patent and Trademark Office designed to shield those parties from the potential liability they would otherwise face in asserting patents in litigation in this Court….." (D.I. 25, D.I. 28). None of these concerns fall into the permissible issues for which a court may retain jurisdiction after a Rule 41(a)(1) dismissal. Again, for reasons outside the scope of this Motion, these concerns are unfounded, but even if these concerns had merit, they would not give rise to supplemental jurisdiction after the notice of dismissal. Accordingly, the Order is outside the scope of any jurisdiction that remains with the Court and must be set aside. Further, as instructed by the Supreme Court, once

the Order is set aside, the cases should be dismissed and the records closed. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Further, none of the concerns raised by the Court were presented by either party. All of the concerns set forth by the Court were raised *sua sponte* and were not raised by any party.

In deciding *United States v. Sineneng-Smith*, 590 U. S. ___, 140 S.Ct. 1575 (2020), a unanimous Supreme Court held that the appellate court had abused its discretion when the appellate panel ordered briefing and consideration of issues which were never raised by any party. The Supreme Court explained that "[i]n our adversarial system of adjudication, we follow the principle of party presentation," where "the parties … frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." 140 S.Ct. at 1579. The Court went on to hold that:

> "[C]ourts are essentially passive instruments of government." … They "do not, or should not, sally forth each day looking for wrongs to right. [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties."

*Id.*, quoting *United States v. Samuels*, 808 F. 2d 1298, 1301 (CA8 1987) (Arnold, J., concurring in denial of reh'g en banc)). See also *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S.Ct. 1959, 1975 (2020) ("that is not respondent's argument, and as a general rule 'we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'"); *N.Y.*

*State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2130 n.6 (2022) (quoting *Sineneng-Smith*); *Págan-Lisboa v. SSA*, 996 F.3d 1, 7 (1st Cir. 2021) ("We judges work in an adversarial system, not an inquisitorial one. … Which means we rely big-time on litigants for evidence, research, and argument."). With respect to limits or exceptions to the principle of party presentation, the Supreme Court stated that "[t]here are no doubt circumstances in which a modest initiating role for a court is appropriate," and gave the example of a court "correct[ing] a party's 'evident miscalculation of the elapsed time under a statute [of limitations]' absent 'intelligent waiver.'" 140 S.Ct. at 1579.  In this case, the evidentiary hearing was held, during which the Court conducted its inquisition. Six days later, the Order issued wholly at the Court's initiative, without any request or input of any party. This is far more than a limited exercise outside the case as presented by the parties, but instead, as in *Sineneng-Smith*, the Court's "radical transformation of this case goes well beyond the pale." 140 S.Ct. at 1581-82.

Thus, even if the Court were to have jurisdiction after the Rule 41(a)(1) dismissal (which it does not), the Court has far exceeded any proper boundary in exercising the same.

**B.    The Order is Overly Broad and Seeks Information That is Not Relevant to Any Issues That Are Collateral to the Actual Cases or Controversies**

These cases have been dismissed. The Court no longer has jurisdiction over any of the claims or the parties. The Court's articulated reasons for issuing the Order are not within the appropriate collateral issues within the Court's jurisdiction. Specifically, there are no motions for costs, fees, Rule 11 sanctions, or to enforce any arbitral awards, and there are no charges of contempt that have been levied. Accordingly, there are no ongoing issues that are collateral to the actual cases. "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). *See also, Rosetti v. Shalala*, 12 F.3d 1216, 1217 n.2 (3rd Cir. 1993) ("[W]ithout a case or controversy, the district court lacked Article III jurisdiction" to take any further action in the case.).  When jurisdiction ceases to exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 94.  The Court therefore has no jurisdiction to issue or enforce the Order. Without any dispute to address, the district court should remain a "passive instrument[] of government" and "should not[] sally forth… looking for wrongs to right." *Sineneng-Smith*, 140 S. Ct. at 1579 (2020) (internal citation omitted).

Further, certain categories of information and communications sought by the Court are overly broad and could include information relating to cases that are not

now and never were subject to this Court's jurisdiction. For example, the Order

directs Plaintiff and Plaintiff's counsel to produce:

> "Any and all communications and correspondence, including emails
> and text messages… …regarding a. the formation of Backertop; b.
> assets, including patents, owned by Backertop; c. the potential
> acquisition of assets, including patents, by Backertop; d. the nature,
> scope, and likelihood of any liability, including but not limited to
> attorney fees, expenses, and litigation costs, Backertop could incur as
> a result of its acquisition of and/or assertion in litigation of any patent;
> [and] e. U.S. Patent Nos. 9,332,385; 9,654,617; 10,477,011; and
> 10,728,382…"

None of these categories of information and communications are limited in

scope to the above-captioned Canary and August Home cases, but would

necessarily include communications and correspondence relating to other

Backertop cases and lawsuits that were not filed in the District of Delaware. This

list is repeated three times in the Order, directing the same production regarding

Plaintiff's communications with its consultants; Plaintiff Counsel's

communications with Plaintiff's consultants; and Plaintiff's Delaware Counsel's

communications with Plaintiff's consultants. The Court further orders production

of "Any and all monthly statements for any and all bank accounts held by

Backertop for the period April 1, 2022 through November 10, 2022" without

reference or regard to transactions relating solely to the Canary and August Home

cases. Thus, any financial activity in any account owned by Backertop during that

time frame would be included in the scope of production, and would reasonably

include transactions wholly unrelated to these two cases, including transactions related to other lawsuits in other district courts outside of Delaware. Thus, the Order is overly broad and must be set aside.

**C.    The Order Seeks Information that is Protected by Attorney-Client Privilege**

The Order is geared towards disclosing the most profound of all privileged communications which are the documents that pass between client and counsel regarding the details and merits of an ongoing litigation. The Supreme Court has consistently explained that "[t]he attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." Its aim is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Jicarilla Apache Natio*n, 564 U.S. at 169 (quoting *Upjohn Co.* 449 U.S. at 389); *Swidler & Berlin*, 524 U.S. at 403 ("The attorney client privilege is one of the oldest recognized privileges for confidential communications.").

The ordered communications and correspondence between Plaintiff, Plaintiff's consultants, and Plaintiff's counsel are privileged.  The communications were manifestly made in confidence for the purpose of obtaining or providing legal assistance for the Plaintiff and were made between privileged persons.   The

unchallenged law in all jurisdictions, including federal courts, is that the privileged

persons include the Plaintiff's authorized agent for communications with counsel:

> "Privileged persons" include the client, the attorney(s), and any of their **agents** that help facilitate attorney-client communications or the legal representation.

*In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012) (quoting *In re Teleglobe*

*Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting Restatement (Third)

of the Law Governing Lawyers §§ 68, 70 (2000)) (emphasis added).

Similarly, work product immunity applies to work conducted by the agents

or consultants for counsel or the client:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, **consultant**, surety, indemnitor, insurer, **or agent**).

Fed. R. Civ. P. Rule 26(b)(3)(A) (emphasis added).

"The presence of a third party will not vitiate the attorney-client privilege, if

the third party is the attorney's or client's agent or possesses a commonality of

interest with the client. *In re Grand Jury Investigation*, 918 F.2d 374, 386 n.20 (3rd

Cir. 1990) (internal citations omitted). This District has likewise held that third

parties sharing a common interest with the plaintiff does not vitiate the attorney-

client privilege, including when the role of the third party individual/entity is to

serve as a "finder" for plaintiffs, helping review, evaluate, and negotiate deals in

order to assist in acquiring patents. *See Intellectual Ventures I LLC v. Altera Corp.*, 2013 U.S. Dist. LEXIS 206477, *16 (D.Del. July 25, 2013).

The privilege precludes disclosure of privileged communications to any third-party, including to the court. Exceptions to this rule are extremely limited. In particular, if there is a dispute as to whether a document or other communication is privileged, a court may order that the documents be produced *in camera* solely "for purposes of determining the merits of a claim of privilege." *Zolin*, 491 U.S. at 568. Documents may also be submitted to a court to determine whether they may be subject to the crime/fraud exception.  But the law is that such review can only be conducted upon a factual showing which has not even been attempted to be made here. *Id.* at 572.

Thus, the Order mandates the production of privileged communications. The Court is not requesting or ordering the production of these communications *in camera* or under a protective order, nor is the Court ordering the production for the purpose of determining privilege. Instead, the Order directs the Plaintiff and its consultants and counsel to produce documents for use in its own investigation. This is an unprecedented and unsupportable exception to the Supreme Court's consistent protection of the attorney-client privilege. In the interests of justice, this alone requires that the Order be set aside.

## V.   CONCLUSION

For the foregoing reasons, Backertop respectfully requests that this Court set aside the Order. Plaintiff further requests that the Court acknowledge that these cases are closed, remove the cases from the Court's docket, and cease any further proceedings.

Dated: April 3, 2023                        Respectfully submitted,

Of counsel:                                 CHONG LAW FIRM PA

Ronald Burns (*pro hac vice*)               */s/ Jimmy Chong*
Fresh IP PLC                                Jimmy Chong (#4839)
5999 Custer Road, Suite 110-507             2961 Centerville Road, Suite 350
Frisco, TX 75035                            Wilmington, DE 19808
(972) 632-9009                              Telephone: (302) 999-9480
ron@freship.com                             Facsimile: (302) 800-1999
                                            Email: chong@chonglawfirm.com

                                            ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 3, 2023 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

                                            */s/ Jimmy Chong*
                                            Jimmy Chong