IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BACKERTOP LICENSING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-572-CFC |
| | ) | |
| CANARY CONNECT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| BACKERTOP LICENSING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-573-CFC |
| | ) | |
| AUGUST HOME, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Jimmy C. Chong, CHONG LAW FIRM, PA, Wilmington, Delaware; Ronald W. Burns, FRESH IP PLC, Frisco, Texas

*Counsel for Plaintiff Backertop Licensing LLC*

Alan Richard Silverstein, CONNOLLY GALLAGHER LLP, Wilmington, Delaware; Mark K. Suri, HINSHAW & CULBERTSON LLP, Chicago, Illinois

*Counsel for Defendant Canary Connect, Inc.*

Jeremy Douglas Anderson, FISH & RICHARDSON, P.C., Wilmington, Delaware; Ricardo J. Bonilla, FISH & RICHARDSON, P.C., Dallas, Texas

*Counsel for Defendant August Home, Inc.*

## MEMORANDUM OPINION

May 1, 2023
Wilmington, Delaware

*Cﾑ F. Connolly*
COLM F. CONNOLLY
CHIEF JUDGE

Pending before me in these actions are three related motions: (1) "Plaintiff's Motion to Set Aside Memorandum Order of March 31, 2023" (No. 22-572, D.I. 26; No. 22-573, D.I. 29); (2) "Plaintiff's Motion to Stay Compliance with [the] Court's March 31, 2023 [Memorandum] Order Pending Ruling on Plaintiff's Motion to Set Aside the Court's March 31, 2023 [Memorandum] Order" (No. 22-572, D.I. 30; No. 22-573, D.I. 32); and (3) "Motion and Order for Withdraw[al] of Jimmy Chong, Esq[.] as Counsel for Plaintiff" (No. 22-572, D.I. 29; No. 22-573, D.I. 31).

## I.     Background

Mr. Chong filed these and two other patent infringement cases on behalf of Backertop Licensing LLC on April 28, 2022.  Ronald Burns was later admitted *pro hac vice* and now also represents Backertop in these cases.  No. 22-572, D.I. 17; No. 22-573, D.I. 20.

For reasons detailed in *Nimitz Technologies LLC v. CNET Media, Inc.*, 2022 WL 17338396 (D. Del. Nov. 30, 2022), by early September 2022, I had developed concerns that certain LLC plaintiffs, including Backertop, in several patent infringement cases filed by Mr. Chong in this Court, may have had undisclosed financial relationships with the patent monetization firm IP Edge and may not have

complied with my April 18, 2022 standing order regarding third-party litigation funding. (I adopt and incorporate here *Nimitz*.) To address those concerns and similar concerns I had about Nimitz (which was not represented by Mr. Chong), I issued on September 12 and 13, 2022 in 12 cases, including these two cases, orders convening a series of evidentiary hearings to determine whether the LLC plaintiffs in the 12 cases had complied with the third-party litigation funding standing order. *Id.* at *11. I also directed the owners of the LLC plaintiffs to attend the hearings in person. *Id.*

On September 14, 2021, Backertop filed in both these cases a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). No. 22-572, D.I. 21; No. 22-573, D.I. 24. Backertop stated in each notice that it was dismissing the respective case without prejudice and that "[e]ach party shall bear its own costs, expenses and attorney's fees." No. 22-572, D.I. 21 at 1; No. 22-573, D.I. 24 at 1. Seven days later, Backertop filed "corrected" notices of dismissal (No. 22-572, D.I. 22; No. 22-573, D.I. 25). The "corrected" notices were identical to the original notices except that they deleted the provision that "[e]ach party shall bear its own costs, expenses and attorney's fees."

On November 4, 2022, I convened the first of the scheduled evidentiary hearings—a consolidated proceeding for cases filed by Nimitz; Mellaconic IP, LLC; and Lamplight Licensing LLC. As I explained in detail in *Nimitz*, the

evidence adduced at that hearing raised serious concerns that the parties may have made inaccurate statements in filings with the Court; that counsel, including Mr. Chong, may have failed to comply with the Rules of Professional Conduct; that real parties in interest, such as IP Edge and a related entity called Mavexar, may have been hidden from the Court and the defendants; and that those real parties in interest may have perpetrated a fraud on the court by fraudulently conveying the patents asserted in this Court to a shell LLC and filing fictitious patent assignments with the United States Patent and Trademark Office (PTO), all designed to shield the real parties in interest from the potential liability they would otherwise face by asserting in litigation the patents in question. *Nimitz*, 2022 WL 17338396, at *26.

Believing that I needed more information to decide whether further action was warranted to address these four concerns, I issued in each of the Nimitz, Mellaconic, and Lamplight cases on November 10, 2022 a memorandum order requiring the plaintiffs in those cases to produce certain records (the November 10 Memorandum Order). *Nimitz Techs. LLC v. CNET Media, Inc.*, No. 21-1247, D.I. 27; *Nimitz Techs. LLC v. BuzzFeed, Inc.*, No. 21-1362, D.I. 21; *Nimitz Techs. LLC v. Imagine Learning, Inc.*, No. 21-1855, D.I. 22; *Nimitz Techs. LLC v. Bloomberg L.P.*, No. 22-413, D.I. 18; *Mellaconic IP LLC v. TimeClock Plus, LLC*, No. 22-244, D.I. 22; *Mellaconic IP LLC v. Deputy, Inc.*, No. 22-541, D.I. 15;

3

*Lamplight Licensing LLC v. ABB Inc.*, No. 22-418, D.I. 24; *Lamplight Licensing LLC v. Ingram Micro, Inc.*, No. 22-1017, D.I. 17.

On that same day, I convened the evidentiary hearing in these two cases that I had ordered on September 12, 2022. The evidence adduced at the hearing only heightened the concerns I had discussed in *Nimitz*. For example, Lori LaPray, whom Backertop had identified as its sole owner in a disclosure statement filed with the Court, testified at the hearing that Mavexar formed, named, and paid for the formation of Backertop, Tr. of Nov. 10, 2022 Hr'g[1] 14:3–15:21; that LaPray had no idea what, if anything, Backertop paid to assume ownership of the patents asserted in these cases, Tr. 24:12–17; that Backertop receives only five percent of any settlements obtained from the assertion of patents held in Backertop's name and Mavexar "gets the other 95 percent," Tr. 41:6–10; that LaPray is "not aware" of any bank accounts held by Backertop, Tr. 32:8–33:5; that "any settlements that come in [to Backertop] go[ ] into [LaPray's] personal [bank] account," Tr. 32:20–23; and that LaPray understands that Backertop and not LaPray personally would be liable for any fees, costs, or other liabilities incurred from asserting in litigation patents titled in Backertop's name, Tr. 30:17–31:24, 35:20–38:7. When I asked Ms. LaPray, "What, if any assets did Backertop have when it filed the [22-]572

_____

[1] The transcript is docketed at No. 22-572, D.I. 24 and No. 22-573, D.I. 27.

lawsuit [against Canary Connect, Inc.]," she replied: "That's what I have Mavexar and my attorneys for." Tr. 33:22–24. And when I asked her, "[I]f Backertop were held liable to pay money to Canary Connect, where would it get its money?"; she replied: "I'm not sure" and "I guess we'd have to cross that bridge when we come to it." Tr. 39:3–8.

At the conclusion of the November 10 hearing, I had the following exchange with Mr. Burns:

> THE COURT:  . . . [B]y structuring this litigation the way you have with Mavexar, you've basically put a plaintiff in this court asserting a patent, and the plaintiff has no assets.  So you've immunized, effectively, the plaintiff from the consequences of a frivolous lawsuit, for instance.
>     Mavexar, who's driving the train, isn't formally a party here, so you've insulated it, assuming nobody wanted to look into this.
>     Fair?
>
> MR. BURNS:  I wouldn't completely agree with that, Your Honor.  The client here, Backertop [w]as formed as an LLC, which does provide a level of insulation for Ms. LaPray personally.
>     I did not inquire as to Backertop's finances or banking accounts or anything of that nature before the proceedings began, so I had no knowledge of that prior.
>     But it's a good faith -- in our estimation, it was a good faith claim, good faith basis for filing the suits.  We had a plaintiff that owned patents.  We had defendants that we had good faith claim of infringement.  So we considered it fair basis for filing.
>
> THE COURT:  Anything else you want to say?

MR. BURNS:  No, Your Honor.

THE COURT:  Okay.  Thank you.
    Mr. Chong?

MR. CHONG:  No, Your Honor.

THE COURT:  All right.  I need to look further into this
and think about it more.  You're invited, if you want,
either of you, to submit any briefing.
    I've already raised in, I'll call them parallel
hearings, concerns I have.  I've articulated some further
concerns because I think some of the testimony here has
only added to the concerns.

Tr. 51:24–53:7.  I also told counsel during the hearing that I would be issuing an

order along the lines of the November 10 Memorandum Order to require

Backertop to produce certain relevant documents.  Tr. 50:25–51:3.

Before I was able to issue that order, Nimitz filed with the United States

Court of Appeals for the Federal Circuit a petition for a writ of mandamus to

reverse the November 10 Memorandum Order.  *In re Nimitz Techs. LLC*, No. 23-

103, D.I. 2 at 3 (Fed. Cir. Nov. 16, 2022).  On November 17, the Federal Circuit

stayed the November 10 Memorandum Order "pending further action of" that

court.  No. 23-103, D.I. 5 at 2 (Fed. Cir. Nov. 17, 2022).  Accordingly, I refrained

from issuing an order requiring the parties to produce documents in these cases.

On December 8, the Federal Circuit denied Nimitz's petition and lifted the

stay in the Nimitz actions.  *In re Nimitz Techs. LLC*, 2022 WL 17494845, at *3

(Fed. Cir. Dec. 8, 2022).  In doing so, the Court held that the four concerns I had

identified as the basis for the November 10 Memorandum Order

> [a]ll . . . relate[] to potential legal issues in the case,
> subject to the "principle of party presentation," *United
> States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020)
> (discussing the principle and its limits), or to aspects of
> proper practice before the court, over which district
> courts have a range of authority preserved by the Federal
> Rules of Civil Procedure, *see* Fed. R. Civ. P. 83(b);
> *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).  The
> district court did not seek information simply in order to
> serve an interest in public awareness, independent of the
> adjudicatory and court-functioning interests reflected in
> the stated concerns.

*Id.* at *2.

Nimitz thereafter filed a combined petition for panel rehearing and rehearing

en banc in the Federal Circuit.  No. 23-103, D.I. 55 (Fed. Cir. Dec. 28, 2022).  On

January 31, 2023, the Federal Circuit denied that petition.  No. 23-103, D.I. 58 at 2

(Fed. Cir. Jan. 31, 2023).  On February 3, Nimitz filed a motion asking the Federal

Circuit "to stay issuing the mandate . . . pending the filing of a petition for

mandamus and/or writ of certiorari in the United States Supreme Court."  No. 23-

103, D.I. 61 at 1 (Fed. Cir. Feb. 3, 2023).  Nimitz argued in its motion that "there

[wa]s . . . good cause for a stay" of the issuance of the mandate because "[i]f the

mandate is not stayed, Nimitz would be required to disclose its privileged

communications."  No. 23-103, D.I. 61 at 2 (Fed. Cir. Feb 3, 2023).  On

February 7, the Federal Circuit issued a written order denying Nimitz's motion to stay the issuance of the mandate. No. 23-103, D.I. 62 at 2 (Fed. Cir. Feb. 7, 2023).

On March 31, I issued in this case a Memorandum Order, the recital clause of which reads:

> [T]he testimony of witnesses and representations of counsel at the November 10, 2022 hearing and other conduct by counsel and entities in this case and other cases in this Court give rise to concerns about the accuracy of statements in filings made by Plaintiff Backertop Licensing LLC (Backertop), whether counsel complied with the Rules of Professional Conduct and orders of this Court, whether there are real parties in interest such as Mavexar and IP Edge that have been hidden from the Court and Defendants, whether those real parties in interest perpetrated a fraud on the court by fraudulently conveying to a shell LLC patents asserted in this Court and filing fictitious patent assignments with the United States Patent and Trademark Office designed to shield those parties from the potential liability they would otherwise face in asserting patents in litigation in this Court, *see Nimitz Techs. LLC v. CNET Media, Inc.,* No. 21-1247, D.I. 32.

No. 22-572, D.I. 25 at 1–2; No. 22-573, D.I. 28 at 1–2. Like the November 10 Memorandum Order, the March 31 Memorandum Order calls for production of certain records relevant to the concerns raised by the November 4 and November 10 evidentiary hearings. The categories of documents covered by the two Memorandum Orders are identical in all material respects. Specifically, the March 31 Memorandum Order required Backertop to produce no later than April 30, 2023 documents and communications that Ms. LaPray and Messrs. Burns and Chong

8

and their respective law firms had with Mavexar, IP Edge, and certain individuals associated with Mavexar and IP Edge relating to: the formation of Backertop; Backertop's assets; Backertop's retention of Messrs. Burns and Chong and their law firms; the patents asserted in these cases; Backertop's potential scope of liability resulting from the acquisition of those patents; the settlement, potential settlement, and dismissal of these cases; and the November 10 evidentiary hearing. The March 31 Memorandum Order also requires the production of (1) monthly statements for any bank accounts held by Backertop between April 1, 2022 through the November 10 evidentiary hearing; (2) documents relating to the use, purchase, or lease of the suite address for Backertop identified in the complaints filed in the actions; and (3) a sworn declaration of Ms. LaPray that identifies any and all assets owned by Backertop as of the date the complaints were filed in these actions.

## II.   Motion to Set Aside the March 31 Memorandum Order

Backertop has moved to set aside the March 31 Memorandum Order.  Its primary contention is that I lack jurisdiction to issue and enforce the Memorandum Order because Backertop voluntarily moved to dismiss the cases and because the defendants did not present the concerns that I identified as the bases for the issuance of the Memorandum Order.  This argument is easily dismissed.

"It is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384,

9

395 (1990).  The Court offered in *Cooter* this list of "example[s]" of such collateral issues:

> For example, district courts may award costs after an action is dismissed for want of jurisdiction.  *See* 28 U.S.C. § 1919.  This Court has indicated that motions for costs or attorney's fees are "independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree."  *Sprague v. Ticonic National Bank*, 307 U.S. 161, 170, 59 S.Ct. 777, 781, 83 L.Ed. 1184 (1939).  Thus, even "years after the entry of a judgment on the merits" a federal court could consider an award of counsel fees.  *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 451, n. 13, 102 S.Ct. 1162, 1166, n. 13, 71 L.Ed.2d 325 (1982).  A criminal contempt charge is likewise "'a separate and independent proceeding at law'" that is not part of the original action.  *Bray v. United States*, 423 U.S. 73, 75, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975), quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 445, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911).  A court may make an adjudication of contempt and impose a contempt sanction even after the action in which the contempt arose has been terminated.  *See United States v. Mine Workers*, 330 U.S. 258, 294, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947) ("Violations of an order are punishable as criminal contempt even though . . . the basic action has become moot"); *Gompers v. Buck's Stove & Range Co.*, *supra*, 221 U.S., at 451, 31 S.Ct., at 502 (when main case was settled, action became moot, "of course without prejudice to the power and right of the court to punish for contempt by proper proceedings").

*Id.* at 395–96 (alterations in the original).

The Court specifically held in *Cooter* that a voluntary dismissal under Rule 41(a)(1) does not deprive a district court of jurisdiction over a Rule 11 motion.  *Id.*

at 398.  But as the Third Circuit (whose law governs this Court's exercise of its

inherent powers) recognized in *Haviland v. Specter*, 561 F. App'x 146, 150 (3d

Cir. 2014), there is no "principled reason why the Court's decision [in *Cooter*]

would not apply equally to sanctions imposed pursuant to a district court's inherent

authority."

What I said *Nimitz* bears repeating here:

> "It has long been understood that '[c]ertain implied
> powers must necessarily result to our Courts of justice
> from the nature of their institution,' powers 'which
> cannot be dispensed with in a Court, because they are
> necessary to the exercise of all others.'" *Chambers v.
> NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United
> States v. Hudson*, 11 U.S. 32, 34 (1812)).  "These powers
> are 'governed not by rule or statute but by the control
> necessarily vested in courts to manage their own affairs
> so as to achieve the orderly and expeditious disposition
> of cases.'" *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S.
> 626, 630–31 (1962)).
>
> The Supreme Court has expressly held that a federal
> court's inherent powers include the powers I have
> exercised here: "the power to control admission to its bar
> and to discipline attorneys who appear before it," *id.*, the
> power to enforce compliance with court orders, *see id.*,
> and "the power to conduct an independent investigation
> in order to determine whether [the court] has been the
> victim of fraud." *Id.* at 44.  These powers extend to
> nonparties.  *See Manez v. Bridgestone Firestone N. Am.
> Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008) ("No matter
> who allegedly commits a fraud on the court—a party, an
> attorney, or a nonparty witness—the court has the
> inherent power to conduct proceedings to investigate that
> allegation and, if it is proven, to punish that conduct.");
> *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th

11

> Cir. 1994) ("[E]ven in the absence of statutory authority,
> a court may impose attorney's fees against a nonparty as
> an exercise of the court's inherent power to impose
> sanctions to curb abusive litigation practices." (citations
> omitted)).

*Nimitz*, 2022 WL at 17338396 (alterations in the original).

It make no sense that a party could deprive a court of its inherent powers simply by filing a notice (or stipulation[2]) of dismissal. *Haviland*, 561 F. App'x at 150. To hold otherwise would render district courts impotent to manage their cases in an orderly fashion and would foster abuse of our judicial system by unethical litigants and their attorneys.

For these same reasons, it is also not necessary that a party—as opposed to the court—raise the concerns that necessitate the exercise of the court's inherent powers. As the Supreme Court held in the seminal case, *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), "it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants."

---

[2] On April 21, 2023—almost three weeks after filing its motion to set aside the March 31 Memorandum Order—Backertop filed in the Canary Connect action a joint stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii). No. 22-572, D.I. 28. Although the "corrected" notice of dismissal filed by Backertop in the Canary Connect action last year deleted the original notice's provision that "[e]ach party shall bear its own costs, expenses and attorney's fees," No. 22-572, D.I. 22 at 1, that provision is included in the joint stipulation of dismissal, *see* No. 22-572, D.I. 28 at 1.

In sum, I neither lacked jurisdiction to issue the March 31 Memorandum Order nor lack jurisdiction to enforce it now.

Backertop next argues that the categories of information sought by the March 31 Memorandum Order are "overly broad" because they "necessarily include communications and correspondence relating to other Backertop cases and lawsuits that were not filed in the District of Delaware." No. 22-572, D.I. 27 at 11–12; No. 22-573, D.I. 30 at 11–12. But the fact that a category of documents relevant to the concerns raised in these cases happens also to touch on issues in other cases does not render the demand to produce that category of documents overly broad. Backertop also faults the Memorandum Order for "repeat[ing] three times" the categories of communications and documents it directs Backertop to produce. No. 22-572, D.I. 27 at 12; No. 22-573, D.I. 30 at 12. The repetition, however, is intentional—and necessary—as it ensures that the relevant documents and communications of (1) Ms. LaPray, (2) Mr. Chong and his firm, and (3) Mr. Burns and his firm are produced. Backertop also argues that the Memorandum Order's requirement that Backertop produce monthly bank account statements for the period between April 1, 2022 and November 10, 2022 is overly broad because "any financial activity in any account owned by Backertop during that time frame would be included in the scope of production, and would reasonably include transactions wholly unrelated to these two cases." No. 22-572, D.I. 27 at 12–13;

13

No. 22-573, D.I. 30 at 12–13.  The information sought, however, is relevant to

ascertaining whether Backertop was a purposefully empty vessel that was

fraudulently formed to insulate Mavexar, IP Edge, and their principals and/or Ms.

LaPray from liability they could otherwise face by accusing others of infringing

the asserted patents.  (The irony that Backertop's lawyers have challenged a

demand to produce statements for bank accounts that Backertop's owner does not

believe exist is not lost on me.)

Finally, Backertop argues that the March 31 Memorandum Order should be

set aside because it "is geared toward disclosing" attorney-client privileged

communications and attorney work product.  No. 22-572, D.I. 27 at 13–15; No. 22-

573, D.I. 30 at 13–15.  Backertop, however, cites, and I know of, no case that

precludes a court from requiring a party to produce *to the court* materials that the

party claims are privileged or covered by the work-product doctrine.  There is also

good reason to doubt Backertop's privilege and work-product assertions.  The

premise of those assertions is that Mavexar is an agent of Backertop.  *See* No. 22-

572, D.I. 27 at 14; No. 22-573, D.I. 30 at 14.  But the evidence adduced to date

suggests that Ms. LaPray and Backertop are doing Mavexar's bidding; not the

other way around.  The "principal" here appears to be Mavexar and/or IP Edge; not

Backertop or Ms. LaPray.  Moreover, as Backertop concedes, "[d]ocuments may

also be submitted to a court to determine whether they may be subject to the

crime/fraud exception" to the privilege and attorney work product doctrines.  No. 22-572, D.I. 27 at 15; No. 22-573, D.I. 30 at 15.  Although I am far from making any definitive conclusions here, it is abundantly clear that there is evidence to suggest that Mavexar and its principals may have used Backertop and Ms. LaPray, along with other LLC plaintiffs and their nominal owners, to perpetrate a fraud on this Court, the PTO, and numerous defendants.

For these reasons, I will deny Backertop's motion to set aside the March 31 Memorandum Order.  And I will order Backertop to comply with the March 31 Memorandum Order no later than May 9, 2023.

## III.  Motion to Stay Compliance with the March 31 Memorandum Order

Backertop requests in its second motion that I "stay compliance with the March 31, 2023 Memorandum Order until [I] ha[ve] ruled on [Backertop's] Motion to Set Aside" that Memorandum Order.  No. 22-572, D.I. 30 at 2; No. 22-573, D.I. 32 at 2.  I will deny this motion as moot since I have decided to deny the motion to set aside the March 31 Memorandum Order.

## IV.  Motion for Jimmy Chong to Withdraw as Attorney

Finally, Mr. Chong filed in both of these cases on April 25, 2023 a motion to withdraw as Backertop's counsel.  No. 22-572, D.I. 29; No. 22-573, D.I. 31.  Mr. Chong states in the motion that "[g]ood cause exists for the withdraw of Jimmy Chong of the Chong Law Firm, P.A. as counsel, in that attorney is unable to

15

effectively communicate with Client in a manner consistent with good attorney-client relations" [sic].  No. 22-572, D.I. 29 at 1–2; No. 22-573, D.I. 31 at 1–2. Backertop and August Home oppose the motion; Canary Connect's position on the motion is not known.  No. 22-572, D.I. 29 at 2; No. 22-573, D.I. 31 at 2.

Also on April 25, in an email to the Court's clerk's office, Mr. Burns stated that he had "started a new job, and do[es] not and cannot represent the plaintiff any longer."  No. 22-572, D.I. 31 at 1; No. 22-573, D.I. 33 at 1.  Mr. Burns attached to his email two pdfs titled "Withdrawal of Attorney Ronald W[.] Burns" (one for each case) and stated in his email that he was "sending [the clerk's office] my Local Rule 83.7 Withdrawals for filing, due to the fact that I cannot get a response from my local counsel."  No. 22-572, D.I. 31 at 1; No. 22-573, D.I. 33 at 1.  (As Mr. Burns is not Delaware counsel, he cannot file, and the Court will not docket, these documents.  *See* D. Del. LR 83.5(d).)

To sort through this morass, I will convene a hearing on June 8, 2023 at 10:00 a.m. and require Messrs. Chong and Burns and Ms. LaPray to attend the hearing in person.  I will refrain from ruling on the motion to withdraw Jimmy Chong as attorney until after that hearing.

## V.    CONCLUSION

For the reasons discussed above, I will deny Backertop's motion to set aside the March 31, 2023 Memorandum Order and its motion to stay compliance with

that Memorandum Order, and I will order Backertop to comply with the March 31

Memorandum Order no later than May 9, 2023.  I will also order Ms. LaPray and

Messrs. Chong and Burns to appear at a hearing on June 8, 2023, at which time I

will hear argument and, if necessary, adduce evidence with respect to the motion to

withdraw Mr. Chong as Backertop's counsel.

The Court will issue an Order consistent with this Memorandum Opinion.

17