## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **BACKERTOP LICENSING LLC,**<br><br>    Plaintiff,<br><br>    v.<br><br>**CANARY CONNECT, INC.,**<br><br>    Defendant. | Civil Action No.: 1:22-cv-00572-CFC |
| **BACKERTOP LICENSING LLC,**<br><br>    Plaintiff,<br><br>    v.<br><br>**AUGUST HOME, INC.,**<br><br>    Defendant. | Civil Action No.: 1:22-cv-00573-CFC |

**PLAINTIFF'S BRIEF ON MOTION FOR RECONSIDERATION OF THE COURT'S MAY 31, 2023 ORDER AND LEAVE FOR MS. LORI LAPRAY TO APPEAR AT THE COURT'S JULY 20, 2023 HEARING VIA <u>VIDEOCONFERENCE</u>**

Dated: June 5, 2023

CHONG LAW FIRM PA
Jimmy Chong (#4839)
2961 Centerville Road, Suite 350
Wilmington, DE 19808
Telephone: (302) 999-9480
Facsimile: (302) 800-1999
Email: chong@chonglawfirm.com

ATTORNEYS FOR PLAINTIFF

# <u>TABLE OF CONTENTS</u>

**Page**

I.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS.............. 1

II.  SUMMARY OF THE ARGUMENTS .......................................................... 4

III.  COURT LACKS AUTHORITY TO ORDER LAPRAY'S APPEARANCE ............... 6

    1.  LaPray Is Not the Plaintiff or a Party.................................................. 6

    2.  Court Does Not Have Authority to Require Appearance of a Non-Party........... 7

    3.  The Court Can Order Ms. LaPray to Testify Only Pursuant to a Subpoena....... 8

IV.  MS. LAPRAY IS UNAVAILABLE TO ATTEND THE JULY 20, 2023 HEARING IN-PERSON AND IS UNAVAILABLE TO TRAVEL TO DELAWARE................ 10

V.  MS. LAPRAY HAS ALREADY TESTIFIED IN-PERSON BEFORE THE COURT 11

VI.  THE COURT PERMITS TELEPHONE AND VIDEOCONFERENCEHEARINGS AND MS. LAPRAY IS WILLING AND AVAILABLE TO APPEAR BY VIDEOCONFERENCE ............................................................................... 12

VII.  THE COURT HAS MADE A GENERAL ACCUSATION OF"FRAUD" WITHOUT ANY SPECIFICITY ..................................................................... 13

VIII.  THE COURT CONTACTED A NON-PARTY, MS. LAPRAY'S EMPLOYER, IN HOPES OF THE NON-PARTY INFLUENCING HER TO ATTEND A HEARING IN DELAWARE THAT SHE CANNOT ATTEND IN-PERSON. ................................. 16

IX.  CONCLUSION..................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*786 Challenger St. LLC v. Bombardier Aero. Corp.*, 2021 U.S. Dist. LEXIS 262075 at *5 (D. Del. 2021) 6

*Alpizar-Fallas v. Favero*, 908 F.3d 910, 918-19 (3d Cir. 2018) .................................................. 13

*Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) .................................................. 8

*CasKim, LLC v. Carver Bible Coll., Inc.*, 2023 U.S. Dist. LEXIS 21833 at *19 (N.D. Ga. 2023) ........... 16

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) .................................................................. 8

*Cohen v. Birrane*, 2017 U.S. Dist. LEXIS 97505 at *1 n.1 (D. Del. 2017) ................................... 7

*Dougherty v. Snyder*, 621 F. App'x 715, 716 (3d Cir. 2015) .................................................... 7

*Ethicon, Inc. v. Randall*, Civ. No. 3:20-cv-13524 (BRM), D.I. 53 (D. N.J., May 28, 2021) ................ 9

*Giarratano v. Huntington Ingalls Incorp.*, Civ. No. 22-88, D.I. 557 at 4 (E.D. La. Apr. 11, 2023) ........... 9

*In re 69 N. Franklin Tpk., LLC*, 693 F. App'x 141, 144 (3d Cir. 2017) ....................................... 6

*Kirchner v. Wyndham Vacation Resorts, Inc.*, Civ. No. 20-436-CFC, D.I. 19 at 6 (D. Del. Mar. 30, 2021)
 ........................................................................................................................ 13

*Lipin v. Ellis*, 2008 U.S. App. LEXIS 28002 at *3-4 (1st Cir. 2008) ........................................ 16

*Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1329 (Fed. Cir. 2002) ................ 14

*Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993) ................................................... 6

*Societe Internationale pour Participations Industrielles et Commerciales, S. A. v. Rogers*, 357 U.S. 197
 (1958) ................................................................................................................ 8

*United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) ............................... 13

## Statutes

35 U.S.C. §261 .......................................................................................................... 14

## Rules

Fed. R. Civ. P. 45(c)(1)(B)(i) ........................................................................................ 8

Fed. R. Civ. P. 9(b) .................................................................................................... 13

## Regulations

The Commentary to Canon 3A(5) of the Code of Conduct for United States Judges ............................. 20

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Backertop Licensing LLC ("Backertop" or "Plaintiff") filed a Complaint for patent infringement against Canary Connect, Inc. ("Canary") on April 28, 2022. D.I. 1 (22-cv-00572-CFC). Plaintiff also filed a Complaint for patent infringement against August Home, Inc. ("August Home") (Canary and August Home collectively referred to herein as "Defendants") on the same day. D.I. 1 (22-cv-00573-CFC). Both complaints alleged infringement of U.S. Patent Nos. 9,332,385; 9,654,617; 10,477,011; and 10,728,382. D.I. 1-1.

On September 12, 2022, the Court *sua sponte* issued a Memorandum Order setting a hearing to determine if Plaintiff had complied with the Court's standing order regarding third-party litigation funding ordering Ms. Lori LaPray ("LaPray"), the owner of Plaintiff, to attend the hearing to be subject to questioning by the Court. D.I. 18.[1] The stated purpose of the standing order is to avoid judicial conflicts. *Nimitz Technologies LLC v. CNET Media, Inc.*, 2022 WL 17338396 (D. Del. Nov. 30, 2022) ("[I]t is critically important that federal judges do not suffer from conflicts that could call into question their impartiality."). On September 14, 2022 and September 21, 2022, prior to the filing of an answer or motion for summary judgment, Plaintiff filed Notices of Dismissal under Fed. R. Civ. P. Rule

---

[1] Unless otherwise noted, all references to the docket (D.I. #) henceforth shall refer to the docket of *Backertop v. Canary Connect, LLC*, 1:22-cv-00572-CFC.

41(a)(1)(A)(i), dismissing the cases without prejudice. D.I. 21-22. The Court held the evidentiary hearing on November 10, 2022, to which Ms. LaPray missed two (2) days of work to fly to Delaware, appeared in person, and gave testimony. D.I. 24. On March 31, 2023, the Court entered a Memorandum Order ("the Order") requiring the production of documents and communications in both of the above-captioned cases. D.I. 25. On April 3, 2023 Plaintiff filed a motion to set aside this order. D.I. 26.

On April 21, 2023 Plaintiff and Defendant Canary Connect filed a joint stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).  Plaintiff and Defendant August Home are in the process of executing an agreement that will require the parties to file a similar joint stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) upon full execution. Plaintiff and Defendant August Home have executed this agreement and are waiting on one other Defendant signature.

On April 28, 2023, Plaintiff filed a Motion to Stay Compliance with the Court's March 31, 2023 Order Pending Ruling on Plaintiff's Motion to Set Aside the Court's March 31, 2023 Order. D.I. 30. The Court denied the motion to set aside, mooted the motion to stay compliance, and required compliance with the Court's March 31, 2023 Memorandum Order no later than May 9, 2023. D. I. 32. In this Order, the Court noted that both Messrs. Burns and Chong are seeking to withdraw from these actions, and set an in-person hearing on the motions to

2

withdraw for June 8, 2023. *Id.* The Court ordered Messrs. Burns and Chong, and Ms. LaPray, to attend the hearing in-person. *Id.*

On May 9, 2023, Plaintiff delivered to the Court all of its document production within its custody, control and possession in compliance with the Court's March 31, 2023 Order, as amended on May 1, 2023. D.I. 36.

Concurrently, Plaintiff filed a Notice of Unavailability of Ms. Lori LaPray Regarding the June 8, 2023 Hearing and Request to Appear Telephonically ("Notice"). D.I. 35. In the Notice and attached sworn declaration, she explains that, due to her work, family obligations, and pre-set travel, that she cannot attend the June 8, 2023 hearing, nor can she attend a hearing in Delaware at any point in the foreseeable future. D.I. 35-1. Additionally, she respectfully requested the Court to allow her to appear telephonically. *Id.* She also noted, for the record, that her position concerning the withdrawal motions is "simply that [Backertop] cannot be left without counsel to represent Backertop in these matters. Backertop needs to have an attorney who can provide counsel, appear at hearings, and file documents. Other than this, Backertop has no opinion on the respective motions to withdraw." *Id.*

On May 31, 2023, the Court issued an Order in response to Plaintiff's May 9, 2023 Notice. D.I. 37. The Court excused Ms. LaPray from attending the June 8, 2023, denied her request to appear telephonically, and set an additional hearing for

July 20, 2023. *Id.* This time, the Court noted that the hearing would be not only concerning withdrawal, but also regarding Plaintiff's May 9, 2023 document production. *Id.* The Court again is ordering that she appear in-person in Delaware. *Id.* The Court noted that if she is unavailable to travel to Delaware to appear on July 20, 2023, that "she needs to submit to the Court no later than June 7, 2023 affidavits and supporting documentation demonstrating exactly why that is the case and propose a range of alternative dates in July for a hearing." *Id.* Additionally, the Court noted that it would (and in fact did) send a copy of this order, an order from the *Nimitz Technologies LLC v. CNET Media, Inc.* case, and an order issued in this case on May 1, 2023, to her employer, Mr. Ronald L. Holmes. *Id.* The Court stated, "[d]oing so will ensure that Ms. LaPray receives notice of this Memorandum Order; and I suspect that Mr. Holmes will explain to Ms. LaPray that, contrary to the assertions in her declaration, his firm does not in fact 'require [her] physical presence' somewhere other than Delaware "throughout the entire summer" such that she cannot a hearing before this Court." *Id.*

## II.   SUMMARY OF THE ARGUMENTS

1.     Ms. LaPray is not a party to this case, but an officer of Plaintiff, and has not been subpoenaed in accordance with Fed. R. Civ. P. 45(c)(1)(B)(i), which holds that a party's officer can only be subpoenaed for a hearing in the State where they reside, work, or regularly transact business in-person in, which for Ms.

LaPray is Texas.

2.      Ms. LaPray is unable to travel to Delaware on July 20, 2023 to attend the hearing in-person. Her responsibilities as a working mother to a 3 and 7 year old prevent her from taking two days away from her family to attend a hearing in Delaware.

3.      Ms. LaPray has already testified in-person for the Court on November 10, 2022 for this "investigation." Although the Court only required a document production from Plaintiff in May 2023, any questions the Court may have of Ms. LaPray concerning the production can be answered through videoconference.

4.      The Court permits hearings through telephone and videoconference. Ms. LaPray is able to attend the July 20, 2023 hearing via videoconference.

5.      The Court has made general accusations of "fraud" without any specificity as required by law.  Plaintiff and Ms. LaPray abided by and followed the laws, rules and guidelines set forth by Congress, the Patent Act and the Federal Rules of Civil Procedure, and, thus, have not committed any misconduct or fraudulent act.

6.      The Court contacted a non-party, Ms. LaPray's employer, in the hopes of influencing her to attend an in-person hearing in Delaware, after she expressed it would cause her undue hardship to appear in person but has voluntarily agreed to appear remotely.   The Court's ex parte communication to her employer has

damaged her reputation at work and disrupted the firm itself.  The Court's actions

demonstrate the appearance of impropriety and lack of impartiality.

## III.   COURT LACKS AUTHORITY TO ORDER LAPRAY'S APPEARANCE

### 1.   <u>LaPray Is Not the Plaintiff or a Party</u>

Ms. LaPray is the Managing Member of Plaintiff Backertop LLC thus she is

not a party to this case.

Whatever rights a Court may have over a party before the Court, that

authority does not extend to the owners or managers of the party.  It is generally

recognized that an LLC is different from its members.  *786 Challenger St. LLC v.*

*Bombardier Aero. Corp*., 2021 U.S. Dist. LEXIS 262075 at *5 (D. Del. 2021) ("A

member's liability is different from the LLC's. After all, that is the entire purpose

of a limited liability company. An LLC's internal affairs involves its internal

'relationships,' not its ability to interact with outside parties").

It is hornbook law, for example, that an LLC or other fictious entity must be

represented by an attorney and cannot be represented by the owner even in cases

where the LLC or other fictious entity is owned by a single individual.  *Rowland v.*

*Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the

better part of two centuries, for example, that a corporation may appear in the

federal courts only through licensed counsel"); *In re 69 N. Franklin Tpk., LLC*, 693

F. App'x 141, 144 (3d Cir. 2017) ("It is well established that a corporate entity

such as a limited liability company may not proceed pro se and must be represented by legal counsel. … The LLC does not escape this rule merely because Wong is its managing member"); *Dougherty v. Snyder*, 621 F. App'x 715, 716 (3d Cir. 2015) ("even single-member LLCs, like corporations, may appear in federal court only through counsel"); *Cohen v. Birrane*, 2017 U.S. Dist. LEXIS 97505 at *1 n.1 (D. Del. 2017) ("Cohen cannot under any circumstances maintain a suit 'as sole shareholder of IDG Companies, LLC' unless he is represented by counsel").

Just as a manager or owner of a fictitious entity cannot appear for the entity, the reverse must also be true that the Court cannot treat the owner of the entity as if it was the entity.  To require Ms. LaPray to appear, the Court must have authority or jurisdiction over the person, but the Court has not presented any basis for such authority or jurisdiction.

2.   <u>Court Does Not Have Authority to Require Appearance of a Non-Party</u>

The Court has not supported any authority to order a non-party to travel across the country to be questioned by the Court.

The Court has previously invoked its "inherent authority" to prosecute the Plaintiff.  Although this is the case, LaPray is not the Plaintiff thus the Court does not have "inherent authority" to Order Ms. LaPray to appear in DE.  LaPray's Constitutional rights and the Federal Rules of Civil Procedure provides that Court cannot Order her to appear.   Furthermore, "Inherent authority" does not mean the

Court has unrestricted and limitless power.  A court has only "'*certain* implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'"  *Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991) (emphasis supplied).  Because they are extraordinary, "inherent powers must be exercised with restraint and discretion …."  *Chambers*, 501 U.S. at 44-45.

To exercise inherent authority, the Court must have jurisdiction over the person against whom the court intends to act.  For example, in *Societe Internationale pour Participations Industrielles et Commerciales, S. A. v. Rogers*, 357 U.S. 197 (1958), the Court rejected inherent powers as a basis for dismissing a complaint for failure to comply with a production order. Noting that "reliance upon . . . 'inherent power' can only obscure analysis of the problem," the Court held that "whether a Court has power to dismiss a complaint because of non-compliance with a production order depends exclusively upon Rule 37." *Id.*, at 207.  Similarly, in *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988), the Court held that a federal court could not invoke its inherent supervisory power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a).

**3.**     **The Court Can Order Ms. LaPray to Testify Only Pursuant to a Subpoena**

As a non-party to the case, under the Federal Rules of Civil Procedure—which apply as equally to the Court as it does parties—a subpoena is required to

compel attendance at a hearing. Fed. R. Civ. P. 45(c).  Specifically, under Fed. R. Civ. P. 45(c)(1)(B)(i):

> (c) PLACE OF COMPLIANCE.
>
> (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
>
> (B) **within the state where the person resides, is employed, or regularly transacts business in person**, if the person
>
> (i) is a party or **a party's officer**.

(emphasis added); *see also Ethicon, Inc. v. Randall*, Civ. No. 3:20-cv-13524 (BRM), D.I. 53 (D. N.J., May 28, 2021) ("a district court has statewide subpoena power over 'a party or a party's officer" in states where it lives or works"); *Giarratano v. Huntington Ingalls Incorp.*, Civ. No. 22-88, D.I. 557 at 4 (E.D. La. Apr. 11, 2023) ("Rule 45(c) geographical limits apply to parties and their officers, directors, and managing agents."). Thus, not only is a subpoena required, but because Ms. LaPray is an officer of Plaintiff, the subpoena can only command her to attend a hearing within the state where she resides, is employed, or regularly transacts business in person. She resides in Texas, is employed in Texas, and only transacts business in person in Texas. *See* LaPray Affidavit.  Thus, a subpoena compelling her attendance at a hearing must compel her to attend a hearing in the State of Texas.

This Court has never issued a subpoena compelling Ms. LaPray to appear in-

person at a hearing and the Federal Rules of Civil Procedure only permits the Court to command her to appear at a location within the State of Texas. The Federal Rules of Civil Procedure do not permit the Court to subpoena her to appear in-person in the State of Delaware.

## IV.    MS. LAPRAY IS UNAVAILABLE TO ATTEND THE JULY 20, 2023 HEARING IN-PERSON AND IS UNAVAILABLE TO TRAVEL TO DELAWARE

As detailed in the previous sworn declaration from Ms. LaPray, D.I. 35-1, and the attached sworn declaration, *see* LaPray Affidavit., Ms. LaPray is unavailable to take the necessary time to travel to Delaware to attend the July 20, 2023 hearing in-person and is unavailable to travel to Delaware.

Ms. LaPray is a working mother to two (2) young children, ages three (3) and seven (7). *See* LaPray Affidavit. Ms. LaPray also has to take the children to day care and picks them up at the end of the day. *See* LaPray Affidavit.  There is no one else to handle these duties. *See* LaPray Affidavit. Additionally, Ms. LaPray is responsible for taking her seven (7) year old child to soccer practice. *See* LaPray Affidavit.

Her husband, Mr. Brandon LaPray, recently started a new job on May 8, 2023. *See* LaPray Affidavit. This job requires him to be physically in the office without the option to work remotely from home. *See* LaPray Affidavit. As the job is new, Mr. LaPray has no Paid Time Off. *See* LaPray Affidavit.  Thus, it is not

possible for him to take over Ms. LaPray's daily family obligations concerning dropping off and picking up the children to/from day care, nor to take the seven (7) year old child to soccer practice. *See* LaPray Affidavit.

Additionally, Mr. LaPray was out of work from the period of April 1, 2023 to May 8, 2023. *See* LaPray Affidavit. There is a substantial financial hardship to require Ms. LaPray to travel from Texas to Delaware, again, to appear in-person, including flights, hotels, car rental, etc. *See* LaPray Affidavit.

In summary, it is an *incredible* hardship and undue burden for Ms. LaPray to once again travel from Texas to Delaware and create an impossible situation regarding childcare for her three (3) and seven (7) year old children. *See* LaPray Affidavit.

## V.  MS. LAPRAY HAS ALREADY TESTIFIED IN-PERSON BEFORE THE COURT

Although there has never been a subpoena issued for Ms. LaPray to appear for a hearing, she voluntarily appeared at the Court ordered hearing in Delaware on November 10, 2022 and gave testimony to the Court for over an hour. D.I. 24. *Four (4) months later*, the Court issued an order requiring the production of documents. D.I. 25. Despite having Ms. LaPray's testimony for almost seven (7) months now, the Court has not articulated any basis for its fraud allegation that was sprung on Backertop after the Court questioned her at the first hearing, yet the Court is again requiring her to fly across the country to be questioned again by the

Court.  If the Court only has questions about the document production, there is no reason why such questions cannot be answered by videoconference or by Backertop's counsel.

Furthermore, as to the withdrawal issue, Ms. LaPray has fully and succinctly expressed Plaintiff's position concerning the attempted withdrawals of Messrs. Burns and Chong. D.I. 35-1 and *see* LaPray Affidavit..  She is also unclear why Backertop's attorneys continue to have to attend hearings even though all parties to the case agreed to the dismissal.  There is literally nothing else for her to add on the subject.

## VI. THE COURT PERMITS TELEPHONE AND VIDEOCONFERENCEHEARINGS AND MS. LAPRAY IS WILLING AND AVAILABLE TO APPEAR BY VIDEOCONFERENCE

Despite the statements of the Court in its May 31, 2023 order, the Court routinely holds hearings telephonically and through videoconference. *See* Court Calendar, attached (showing the upcoming docket of hearings in the District of Delaware, to which many of the hearings are held "Telephonically", "Virtually" and through "Videoconference").  The Bankruptcy Court of this District holds remote hearings that are "conducted entirely over Zoom." https://www.deb.uscourts.gov/telephonic-hearings (last accessed on June 1, 2023). Ms. LaPray is willing and available to appear by videoconference on July 20, 2023 at 1:00pm ET. *See* LaPray Affidavit.

Provided that no subpoena has been issued compelling Ms. LaPray's attendance in-person in Delaware (nor can one), nor is there any prejudice to the Court by having her appear remotely, and in light of the her unavailability, hardship, and undue burden as a working mother to travel to Delaware, Plaintiff respectfully requests the Court permit Ms. LaPray to appear at the July 20, 2023 hearing via videoconference. Plaintiff respectfully submits that there is no good faith reason to deny the request given the totality of the circumstances and the Court's lack of authority to issue a subpoena to compel her to appear in-person in Delaware.

## VII.   THE COURT HAS MADE A GENERAL ACCUSATION OF "FRAUD" WITHOUT ANY SPECIFICITY

Fed. R. Civ. P. 9(b) states "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Particularity" has been interpreted to require that plaintiffs "place the defendant on notice of the precise misconduct with which [it is] charged" by "alleg[ing] the date, time and place of the alleged fraud or otherwise inject[ing] precision or some measure of substantiation into a fraud allegation." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 918-19 (3d Cir. 2018) (internal quotation marks and citation omitted); *see also United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir.

2019) (requiring "the who, what, when, where, and how of the events at issue")." *Kirchner v. Wyndham Vacation Resorts, Inc.*, Civ. No. 20-436-CFC, D.I. 19 at 6 (D. Del. Mar. 30, 2021).

In the Court's March 31, 2023 Order, the Court states that it is concerned about "whether those real parties in interest perpetrated a fraud on the court by fraudulent conveying to a shell LLC patents … and filing fictitious patent assignments with the United States Patent and Trademark Office designed to shield those parties from the potential liability they would otherwise face in asserting patents in litigation in this Court." D.I. 25.

These general allegations are not supported by any facts or specified act of misconduct or fraud.  Congress has provided that "[p]atents shall have the attributes of personal property." 35 U.S.C. §261; *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp*., 284 F.3d 1323, 1329 (Fed. Cir. 2002) (*en banc*) ("Congress has specifically provided that patents are to be treated as personal property").  Thus, Congress has allowed Plaintiff to purchase and enforce patents. Plaintiff has done nothing but what Congress has allowed.  Moreover, Congress has specifically mandated that it is irrelevant who is the owner of the patentee or who obtains the benefit of the patent.  Fed. R. Civ. P. Rule 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest," and then further defined that:

> The following may sue in their own names *without joining the person*
> *for whose benefit the action is brought*: ***
>
> (G) a party authorized by statute.

(Emphasis added).  Thus, the only "party authorized by statute" to sue for patent infringement is the patentee or the "successors in title" to the patent. Moreover, Congress chose not to allow parties that have an interest in a patent, but are not patentees or their successors in title, to be included as parties in patent litigation.

Plaintiff and Ms. LaPray abided by and followed the laws, rules and guidelines set forth by Congress, the Patent Act and the Federal Rules of Civil Procedure, and, thus, have not committed any misconduct or fraudulent act.

The Court's statement that Plaintiff intended to "shield those parties from the potential liability they would otherwise face in asserting patents in litigation in this Court" is legally irrelevant.  Almost all plaintiffs and defendants in patent cases are artificial legal entities such as LLCs which protect the entities' owners from personal liability.  Even if it were true that the assignment to Plaintiff was designed to shield parties from the potential liability that they would otherwise face in litigation, there is no difference with respect to any other patent owner LLC filing a patent infringement action.[2]  The Court has presented no evidence of fraud

---

[2]  State laws expressly exempt the owners and members of **all** LLCs from the personal liability. See, for example, 6 Del.C. §18-303(a) and 3 Texas Code §101.114.

and there has been no accusation from any opposing party of fraud, yet the Court is engaged in an investigation with no limit in duration or burden on the parties in an attempt to prove its case for fraud.  Furthermore, this investigation is not being imposed on other parties involved in patent infringement cases but for a select few. Given the fact that Delaware has been open to LLC formation in its jurisdiction, it would be against strongly held precedent to find that forming an LLC (or corporation or limited partnership of any other artificial entity) to protect the owners from liability would be evidence of fraud.  Thus, other than citing Plaintiff's LLC formation  and citing the statutory principle of liability protection which every corporation, LLC and other fictitious entities inherently utilizes, there has not been any facts presented supporting misconduct or fraud.  Fraud requires more than a string of unsupported and unsupportable pejoratives.  *Lipin v. Ellis*, 2008 U.S. App. LEXIS 28002 at *3-4 (1st Cir. 2008) ("Pejorative characterizations … cannot substitute for statement of plausible claims in the face of presumptively valid exercises of a court appointee's power to administer an estate"); *CasKim, LLC v. Carver Bible Coll., Inc*., 2023 U.S. Dist. LEXIS 21833 at *19 (N.D. Ga. 2023) ("labeling Pacman's conduct as 'predatory lending' merely provides a pejorative characterization of conduct without actually describing conduct that might amount to fraud. So, those allegations are insufficient").

**VIII.  THE COURT CONTACTED A NON-PARTY, MS. LAPRAY'S EMPLOYER, IN HOPES OF THE NON-PARTY INFLUENCING HER TO**

**ATTEND A HEARING IN DELAWARE THAT SHE CANNOT ATTEND IN-PERSON.**

In its May 31, 2023 Order, the Court noted that it would (and in fact did) send a copy of this Order, an Order from the *Nimitz Technologies LLC v. CNET Media, Inc.* case, and an Order issued in this case on May 1, 2023, to Ms. LaPray's employer, Mr. Ronald L. Holmes. D.I. 37. Mr. Holmes is not a party to the case and has no involvement with any of the facts of the case and only relationship he has to the case is that he employs Ms. LaPray.  In sending these documents to Ms. LaPray's employer, the Court initiated an *ex parte* communication.

The Court's reasoning for sending her employer the May 31 Order and previous Orders was twofold.  First, the Court felt it was the only certain method of communication with Ms. LaPray.   The Court stated that it "appears that Ms. LaPray may not currently be in communication with Backertop's counsel of record," but did not cite any facts the Court relies on to come to the conclusion. The Court did not cite any prior occurrence in which Ms. LaPray failed to receive notice of a Court Order directed to her, did not communicate with Backertop's counsel to verify whether or not Backertop's counsel would ensure Ms. LaPray's receipt of the Order, and did not attempt to mail the Order to Ms. LaPray directly or to Backertop's registered agent mailing address. Further, the Court did not provide any basis as to why sending the Order to Ms. LaPray's employer would

17

ensure delivery of the Order to Ms. LaPray, and did not provide any rationale as to why directly contacting Ms. LaPray's employer was the one and only means to ensure Ms. LaPray's receipt of the May 31, 2023 Order.

The Court's second justification is that it "suspects that Mr. Holmes will explain to Ms. LaPray that, contrary to the assertions in her declaration, his firm does not in fact "require [her] physical presence" somewhere other than Delaware…" The Court's ex parte communication with Ms. LaPray's employer, who is an attorney but not a party involved in the litigation, has now made Ms. LaPray's employer and his law firm involved in the litigation, with an expectation that he and the firm influence Ms. LaPray's actions in accordance to the will of the Court. As Mr. Holmes is Ms. LaPray's employer and provides a means for her career and livelihood, the Court presumes that an "expla[nation]" by Ms. LaPray's employer would exert influence over her actions.

The above two reasons to contact Ms. LaPray's employer are not justified.

Ms. LaPray has no control over how her employer will react or respond to having received this communication from a Federal Judge regarding a matter involving her, but has nothing to do with her employer or the firm. *See* LaPray Affidavit. The Court's ex parte communication to her employer has damaged her reputation at work and disrupted the firm itself, as the Court has now involved Ms. LaPray's employer and his firm into this litigation. *See* LaPray Affidavit.

It is grossly negligent on the part of the Court not to consider the repercussions on Ms. LaPray and her employment.   Ms. LaPray is deeply concerned that this Court will continue to communicate with and involve her employer, further jeopardizing and damaging her employment and career.   *See* LaPray Affidavit.  She fears any further involvement with her firm on this matter by the Court would jeopardize her reputation and potential employment, and does not want her firm involved in any manner whatsoever.  *See* LaPray Affidavit.. This ex parte communication has disrupted her work, family, and life, and she is living in a sense of fear and intimidation by this Court. *See* LaPray Affidavit..  Moreover, requiring Ms. LaPray to take additional time off of work to attend an in-person hearing ***after*** the Court has initiated its ex parte communication to her employer is damaging in and of itself to her professional reputation.  Ms. LaPray feels harassed by this Court's requirement of her to travel in-person to Delaware, and feels the Court's treatment of her and its expectation of her employer to "explain" to her what she can and cannot do is textbook gender harassment and intimidation, and further influencing her employer to engage in gender harassment and discrimination (e.g., in the form of "mansplaining"). *See* LaPray Affidavit. At the very least, it demonstrates the appearance of impropriety and lack of impartiality on part of the Court.

The Court has clearly overstepped its authority in jeopardizing her employment over a hearing that can be held remotely, which LaPray has agreed to, and to which the Court has no authority to compel her to attend in-person in Delaware. Ms. LaPray has complied with everything the Court has asked for to date. This Court's contact with her employer and communication of the Court's expectation for her employer and firm to become involved in this litigation, without any proper justification, has led to a disruption to her life, her employment, and her family, and is beyond the powers of the Court.

The Commentary to Canon 3A(5) of the Code of Conduct for United States Judges states "[i]n disposing of matters promptly, efficiently, and fairly, a judge must demonstrate due regard for the rights of the parties to be heard and to have issues resolved **without unnecessary cost or delay**. A judge should monitor and supervise cases to reduce or eliminate dilatory practices, **avoidable delays, and unnecessary costs**." (emphasis added) In asking Ms. LaPray to travel again to Delaware, and not requesting documents prior to having her appear in Delaware (and instead requesting documents four (4) months after she testified in-person), and requiring Backertop's counsel to continue to do work and attend hearings in a case that was dismissed nine (9) months ago, the Court has not demonstrated *any* regard for having issues resolved without unnecessary cost or delay.

Instead of requiring Ms. LaPray to again fly across country this time at the risk of her job and family, Plaintiff respectfully suggests and submits that Ms. LaPray, a working mother, be permitted to appear via videoconference for the July 20, 2023 hearing.

## IX.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court reconsider its May 31, 2023 Order and permit Ms. LaPray to appear via videoconference for the July 20, 2023 hearing.

Dated: June 7, 2023                                     Respectfully submitted,

CHONG LAW FIRM PA

*/s/ Jimmy Chong*
Jimmy Chong (#4839)
2961 Centerville Road, Suite 350
Wilmington, DE 19808
Telephone: (302) 999-9480
Facsimile: (302) 800-1999
Email: chong@chonglawfirm.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 7, 2023 to all counsel of record who are deemed to have consented to electronic service via

the Court's CM/ECF system.

*/s/Jimmy Chong*
Jimmy Chong