# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BACKERTOP LICENSING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-572-CFC |
| | ) | |
| CANARY CONNECT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

|  |  |  |
|---|---|---|
| BACKERTOP LICENSING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-573-CFC |
| | ) | |
| AUGUST HOME, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Jimmy C. Chong, CHONG LAW FIRM, PA, Wilmington, Delaware; Ronald W. Burns, Frisco, Texas

*Counsel for Plaintiff Backertop Licensing LLC*

Alan Richard Silverstein, CONNOLLY GALLAGHER LLP, Wilmington, Delaware; Mark K. Suri, HINSHAW & CULBERTSON LLP, Chicago, Illinois

*Counsel for Defendant Canary Connect, Inc.*

Jeremy Douglas Anderson, FISH & RICHARDSON, P.C., Wilmington, Delaware; Ricardo J. Bonilla, FISH & RICHARDSON, P.C., Dallas, Texas

*Counsel for Defendant August Home, Inc.*

## **MEMORANDUM OPINION**

.

July 10, 2023
Wilmington, Delaware

_____

COLM F. CONNOLLY
CHIEF JUDGE

Pending before me is Plaintiff Backertop Licensing LLC's Motion for Reconsideration of the Court's May 31, 2023 Memorandum Order and Leave for Ms. Lori LaPray to Appear at the Court's July 20, 2023 Hearing via Videoconference (No. 22-572, D.I. 40; No. 22-573, D.I. 43).

I.

In the May 31, 2023 Memorandum Order (No. 22-572, D.I. 37; No. 22-573, D.I. 40), I denied Backertop's request to allow Ms. LaPray to participate by telephone in a hearing I convened on June 8, 2023; excused her from appearing in person at that hearing; and ordered her to appear in person at a hearing on July 20, 2023.  I also stated in the Memorandum Order that "[i]f a hearing on [July 20] presents exceptional difficulties for Ms. LaPray, then she needs to submit to the Court no later than June 7, 2023 affidavits and supporting documentation demonstrating exactly why that is the case and propose a range of alternative dates in July for a hearing." No. 22-572, D.I. 37 at 6; No. 22-573, D.I. 40 at 6.

On June 7, Backertop filed the pending motion. *See* No. 22-572, D.I. 40; No. 22-573, D.I. 43.

## II.

The legal standard that governs motions for reconsideration is well established in the Third Circuit.  "A proper [motion for reconsideration] . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct [a] clear error of law or prevent manifest injustice."  *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

In its briefing, Backertop does not mention this legal standard, let alone discuss how it has demonstrated any of the three requisite grounds to warrant reconsideration of the Memorandum Order.  Backertop's principal argument appears to be that the May 31, 2023 Memorandum Order rests on a clear error of law.  I say this because Backertop devotes the bulk of its briefing to its contentions that "[t]he Court can order Ms. LaPray to testify only pursuant to a subpoena" issued under Federal Rule of Civil Procedure 45(c); and that, under Rule 45(c)(1)(B)(i), "a subpoena compelling her attendance at a hearing must compel her to attend a hearing in the State of Texas" because Ms. LaPray is a nonparty corporate officer who "resides in Texas, is employed in Texas, and only transacts business in person in Texas."  No. 22-572, D.I. 40-1 at 11–12 (some capitalization removed); No. 22-573, D.I. 43-1 at 11–12 (same).  Backertop did not raise this

2

argument in its request for Ms. LaPray to participate by telephone in the June 8 hearing and therefore forfeited the argument. *See United States v. Dupree*, 617 F.3d 724, 732 (3d Cir. 2010) ("[Motions for reconsideration] are granted for compelling reasons, such as a change in the law which reveals that an earlier ruling was erroneous, not for addressing arguments that a party should have raised earlier." (internal quotation marks and citation omitted)). But in any event, the argument fails on the merits for two reasons.

First, I did not rely on Rule 45—or any other Federal Rule of Civil Procedure—when I ordered Ms. LaPray to attend the July 20 hearing in person. Instead, for the reasons outlined in *Nimitz Technologies LLC v. CNET Media, Inc.*, 2022 WL 17338396 (D. Del. Nov. 30, 2022), and *Backertop Licensing LLC v. Canary Connect, Inc.*, 2023 WL 3182084 (D. Del. May 1, 2023), both of which I incorporate here, I relied on the Court's inherent powers. As the Supreme Court explained in *Chambers v. NASCO, Inc.*, "[t]hese powers are 'governed *not by rule* or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" 501 U.S. 32, 43 (1991) (emphasis added) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)).

These inherent powers extend to nonparties. *See Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008) ("No matter who

3

allegedly commits a fraud on the court—a party, an attorney, or a nonparty witness—the court has the inherent power to conduct proceedings to investigate that allegation and, if it is proven, to punish that conduct."); *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1994) ("[E]ven in the absence of statutory authority, a court may impose attorney's fees against a non-party as an exercise of the court's inherent power to impose sanctions to curb abusive litigation practices."); *Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.)*, 40 F.3d 1084, 1089–90 (10th Cir. 1994) (upholding a bankruptcy judge's imposition of sanctions against nonparty president of debtor corporation as an appropriate exercise of "the inherent power recognized by the Supreme Court in *Chambers*"); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 282–83 (9th Cir. 1996) (upholding a bankruptcy judge's imposition of a $250,000 sanction against a nonparty individual whose corporate entity was the debtor as an appropriate exercise of a court's "inherent authority to sanction" under *Chambers*); *American Trust v. Sabino*, 2000 WL 1478372, at *1 (6th Cir. Sept. 28, 2000) (affirming costs sanction imposed personally against trustee of plaintiff trust because, under *Chambers*, "[a] federal court has the inherent power to impose sanctions against a party or non-party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."). And they empower a court to order a nonparty representative of a corporate party to attend court proceedings. *See, e.g.,*

4

*G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 650, 656–57 (7th Cir. 1989) (en banc) (holding that a district court has the inherent power and authority to order a corporate party's representative to attend in person a pretrial conference to discuss settlement of the case and to impose sanctions for failure to comply with that order); *In re Novak*, 932 F.2d 1397, 1407 (11th Cir. 1991) ("the power to direct parties to produce individuals with full settlement authority at pretrial settlement conferences is inherent in the district courts").

Second, Rule 45 has no bearing on the circumstances at hand.  Backertop argues that Rule 45(c) requires a court to issue a subpoena in order to compel a person's attendance at a hearing.  No. 22-572, D.I. 40-1 at 11–12 ("As a non-party to the case, under the Federal Rules of Civil Procedure—which apply as equally to the Court as it does parties—a subpoena is required to compel attendance at a hearing." (citing FED. R. CIV. P. 45(c))); No. 22-573, D.I. 43-1 at 11–12 (same).  But nothing in Rule 45(c) or any other part of Rule 45 requires a district judge to issue a subpoena to compel a person's attendance in court.  And, more to the point here: Nothing in Rule 45 prohibits a district judge from issuing an order to compel a person's attendance in court.

Rule 45(c) merely prescribes geographic limits on subpoenas issued pursuant to Rule 45(a).  Under Rule 45(c)(1)(B)(i), for example, a subpoena issued under Rule 45(a) to a party or a party's officer "may command a person to attend a

5

trial, hearing, or deposition only . . . within the state where the person resides, is

employed, or regularly transacts business in person." Rule 45(a), for its part,

authorizes the clerk of the court and attorneys authorized to practice in the court—

but not the court itself—to issue subpoenas. *See* FED. R. CIV. P. 45(a)(3) ("*Issued*

*by Whom.* The clerk must issue a subpoena, signed but otherwise in blank, to a

party who requests it. That party must complete it before service. An attorney also

may issue and sign a subpoena if the attorney is authorized to practice in the

issuing court." (emphasis in original)). While subpoenas issue *from* the court

where the action is pending, they are neither issued nor instigated *by* the court.

*Compare* FED. R. CIV. P. 45(a)(2) ("*Issuing Court.* A subpoena must issue *from*

the court where the action is pending." (second emphasis added)) *with* FED. R. CIV.

P. 45(a)(3). Thus, Rule 45 does not limit in any way the inherent power of a

district judge to issue *sua sponte* an order compelling the attendance of a witness at

a hearing; it limits only the power of a court to enforce a subpoena that was issued

either by the clerk of the court at the request of a party or by an attorney authorized

to practice in that court.

Backertop's reading of Rule 45 is not only at odds with the Rule's text, but

in countless cases it would also severely hamper if not nullify a court's inherent

powers—"powers which cannot be dispensed with in a Court," *Chambers*, 501

U.S. at 43 (internal quotation marks and citations omitted). A corporate party can

6

act only through natural persons.  But under Backertop's theory, if no

representative of a corporate party lives, works, or conducts in-person business in

the state where the court is located, then the judge has no power to call into court a

natural person to speak for that party on any topic, including alleged litigation

misconduct by the corporate party.

The facts of these cases illustrate the absurdity of Backertop's position.

According to Ms. LaPray, Backertop has no employees, no bank accounts, and no

assets other than the patents asserted in these cases.  No. 22-572, D.I. 24 at 33:13–

14 (no employees), 32:8–9 (no bank account), 16:18–19, 32:8–33:24, 39:3–5 (no

assets other than the patents); No. 22-573, D.I. 27 at 33:13–14 (same), 32:8–9

(same), 16:18–19, 32:8–33:24, 39:3–5 (same).  Ms. LaPray also says that she is

Backertop's sole owner and managing member.  No. 22-572, D.I. 23-1 ¶ 1; No. 22-

573, D.I. 26-1 ¶ 1.  Last year, Backertop filed at least 12 patent infringement cases

in United States District Courts.[1]  Three of those cases were filed in Texas.  The

---

[1] *Backertop Licensing LLC v. BlackBerry Corp.*, No. 22-1013 (W.D. Tex. filed
Sept. 29, 2022); *Backertop Licensing LLC v. JAMF Software LLC*, No. 22-1015
(W.D. Tex. filed Sept. 29, 2022); *Backertop Licensing LLC v. Lightspeed Sols.,
LLC*, No. 22-1018 (W.D. Tex. filed Sept. 29, 2022); *Backertop Licensing LLC v.
Wyze Labs, Inc.*, No. 22-570 (D. Del. filed Apr. 28, 2022); *Backertop Licensing
LLC v. Canary Connect, Inc*, No. 22-572 (D. Del. filed Apr. 28, 2022); *Backertop
Licensing LLC v. August Home, Inc.*, No. 22-573 (D. Del. filed Apr. 28, 2022);
*Backertop Licensing LLC v. Hampton Prods. Int'l Corp.*, No. 22-574 (D. Del. filed
Apr. 28, 2022); *Backertop Licensing LLC v. Condeco Software, Inc.*, No. 22-10141
(S.D.N.Y. filed Nov. 29, 2022); *Backertop Licensing LLC v. Justworks, Inc.*, No.
22-10142 (S.D.N.Y. filed Nov. 29, 2022); *Backertop Licensing LLC v. Cortado,*

7

nine remaining cases were filed in district courts located in Delaware, New York, Colorado, and California; but under Backertop's theory, Ms. LaPray can never be compelled to attend a hearing in these district courts even though she is the only natural person through whom Backertop can act.

To sum up: The May 31, 2023 Memorandum Order was properly issued pursuant to the Court's inherent powers and was not infected by a clear error of law. Rule 45 does not foreclose a court from ordering the sole representative of a corporate party to attend a court hearing. I will therefore deny the motion for reconsideration.

III.

Backertop also asks me to reconsider, based on Ms. LaPray's willingness and availability to appear by videoconference, whether Ms. LaPray must attend the July 20 hearing in person. As I explained in the May 31, 2023 Memorandum Order, I denied Ms. LaPray's earlier request to participate in the June 8 hearing by telephone for three reasons:

> First, Judicial Conference policy generally prohibits the broadcasting of proceedings in federal district courts. *See Guide to Judiciary Policy*, Vol. 10, Ch. 4, § 410.10(a). That policy was temporarily changed during the COVID-19 pandemic to allow for remote public

---

*Inc.*, No. 22-2550 (D. Colo. filed Sept. 30, 2022); *Backertop Licensing, LLC v. Exaktime Innovations, Inc.*, No. 22-8571 (C.D. Cal. filed Nov. 23, 2022); *Backertop Licensing, LLC v. Fantasia Trading LLC*, No. 22-2081 (C.D. Cal. filed Nov. 23, 2022).

8

> access to civil proceedings.  James C. Duff, *March 31,
> 2020 Memorandum*, Administrative Office of the United
> States Courts,
> https://jnet.ao.dcn/sites/default/files/pdf/DIR20-054.pdf.
> Although this temporary policy has expired, the Judicial
> Conference has authorized a grace period for remote
> public access to civil proceedings through September 21,
> 2023.  Roslynn R. Mauskopf, *May 8, 2023
> Memorandum*, Administrative Office of the United States
> Courts, https://infoweb.ao.dcn/bcastpdf/DIR23-051.pdf.
> Nonetheless, during the grace period, remote hearings
> remain the exception, not the rule.  And in this case, the
> circumstances are not so exceptional as to justify a
> remote hearing.
>
> Second, given the representations and positions of
> counsel and Ms. LaPray and the apparent lack of
> communication between counsel and among counsel and
> Ms. LaPray, Mr. Chong's motion to withdraw is unusual
> to say the least.  My previous description of the situation
> as a "morass" remains accurate, and to sort through that
> morass it may be necessary to assess the credibility of
> counsel and of Ms. LaPray.  Credibility assessments are
> difficult to make over the phone.
>
> Third, I have now had a chance to review Backertop's
> May 9 document production, and I have questions for
> Ms. LaPray about the production that also require her
> physical presence in court so that I can assess her
> credibility.

No. 22-572, D.I. 37 at 4–5; No. 22-573, D.I. 40 at 4–5.  Even though a streamed

video may be better than a phone call for assessing credibility, these factors apply

equally to Ms. LaPray's request to appear by videoconference instead of in person

at the July 20 hearing.  Live, in-person testimony remains the best means of

ascertaining the truth.  And two facts that emerged after May 31 make it even more

9

critical for me to be in the best position I can to assess Ms. LaPray's credibility.

First, during the June 8 hearing, Backertop's two counsel of record, Messrs. Chong and Burns, gave seemingly irreconcilable accounts of the events that led to their respective requests (opposed by Backertop) to withdraw as counsel. *See* Tr. of June 8 Hr'g 9:3–10:9, 11:6–11, 14:11–16:7; No. 22-572, D.I. 40-3 ¶ 14; No. 22-573, D.I. 43-3 ¶ 14; No. 22-572, D.I. 35-1 ¶ 10; No. 22-573, D.I. 38-1 ¶ 10.[2] Second, as I explained at the June 8 hearing, it does not appear that Backertop's May 9 document production fully complied with the Court's March 31, 2023 Memorandum Order (No. 22-572, D.I. 25; No. 22-573, D.I. 28). *See, e.g.*, Tr. 7:16–23, 17:19–23, 29:1–6, 31:7–18, 94:9–16.

Backertop insists that "the Court routinely holds hearings telephonically and through videoconference." No. 22-572, D.I. 40-1 at 15; No. 22-573, D.I. 43-1 at 15. But the exhibit it filed and cites in support of that assertion—a copy of the Court's calendar for the period May 22, 2023 through June 16, 2023—proves otherwise. *See* No. 22-572, D.I. 40-2; No. 22-573, D.I. 43-2.[3] As the calendar and applicable docket sheets show, 23 of the 24 proceedings I held during this time frame were in person. The sole exception was a scheduling teleconference I held

---

[2] The transcript of the June 8 hearing can be found at: No. 22-572, D.I. 41; No. 22-573, D.I. 44.

[3] Though titled "May 22, 2023 to June 19, 2023," the exhibit lists proceedings that occurred from May 22 through June 16.

10

by telephone because there were no material disputes between the parties.  Thus,

my insistence on holding an in-person hearing in these cases is entirely consistent

with my practice in all my cases and entirely consistent with the Judicial

Conference's policies.

Backertop also says that Ms. LaPray is "unavailable" to attend the July 20

hearing because she is a working mother with two young children; she "is

responsible for taking her seven (7) year old child to soccer practice"; her

husband's new job makes it "not possible for him to take over Ms. LaPray's daily

family obligations concerning dropping off and picking up the children to/from day

care, nor to take the seven (7) year old child to soccer practice"; and it is "a

substantial financial hardship to . . . travel from Texas to Delaware . . . to appear

in-person, including flights, hotels, car rental, etc."  No. 22-572, D.I. 40-1 at 13–

14; No. 22-573, D.I. 43-1 at 13–14.  Contrary to the May 31, 2023 Memorandum

Order's explicit directives, Ms. LaPray neither submitted documentation to support

these assertions nor offered alternative dates for her to appear in person.

While I am sympathetic to the childcare burdens that business- and court-

related travel can impose on working parents, Ms. LaPray should have given due

consideration to those matters before she agreed to serve as the sole natural person

affiliated with Backertop and before Backertop filed the dozen patent infringement

suits it did last year in district courts across the country, including four suits in Delaware.

With respect to Ms. LaPray's assertion that traveling to and from the July 20 hearing would cause her "a substantial financial hardship," internet searches by my staff on July 6, 2023 on Expedia.com and the Uber application suggest otherwise for an individual of Ms. LaPray's apparent means.  The hearing is scheduled for 1:00 p.m.; and those searches show that it is possible to buy for less than $160 a ticket for a roundtrip flight on July 20 between Dallas (where Ms. LaPray resides) and the Philadelphia Airport (less than 22 miles from the Courthouse) that would enable Ms. LaPray to leave home that morning, attend the hearing, and return home that evening.  *See* EXPEDIA, https://www.expedia.com (under "flights" search Dallas, TX to Philadelphia, PA departing July 20 and returning July 20).[4]  Round trip transport between the Philadelphia Airport and the Courthouse can be reserved for July 20 using Uber for about $140.  *See* UBER, https://www.uber.com (log in to

---

[4] The arriving flight is Spirit Airlines 263, and the returning flight is Spirit Airlines 262.  The full URL is: https://www.expedia.com/Flight-Information?journeyContinuationId=AQrrAQrVAXY1LXNvcy0wNDc1ZTdkOTA4ZDk3ZTAyNDY5NTE3NWE1MzU5ZjY0NC0wLTAtMX4yLlN-QVFvQ0NBRVNCd2pVQkJBQkdBRW9BBbGdDY0FBfkFRb2lDaUFFJenBZQkVn TXlOak1ZbzdFQklPOVpLT1hCc2dJd3I4T3lBamhVUUFFCWUFRb2lDaUFFJenBZBZ QkVnTXlOaklZNzFrZ283RUJLUFhUc2dJd3k5V3lBamhWUUFFCWUFSSUtDDQ UVRQVJnQktnSk9TeGdCCSWdRSUFSQUJLQUIvQXlnRU1BMBEpXI_C9XhjQ CIBASoFEgMKATESPwoWCgoyMDIzLTA3LTIwEgNERlcaA1BITAoWCgoy MDIzLTA3LTIxEgNQSEwaA0RGVxIHEgVDT0FDSBoCEAEgAhoKCAESBho AIgIIAxoMCAISCBoAIgQIAxABIAEyCwj_____8BOgA%3D.

your account or create a free account, and under "Ride" select "Schedule for later," and enter the relevant time and location to be picked up at the airport; repeat this process to schedule a ride back to the airport).  Thus, the total cost for Ms. LaPray to travel to the July 20 hearing looks to be in the neighborhood of $300.

Ms. LaPray has not demonstrated that costs of this amount would impose a substantial financial burden on her or Backertop.  Record evidence and public filings indicate that it would not.  Ms. LaPray testified at the November 10 hearing, for example, that even though Backertop earns only 5% of the settlements obtained from patent litigation pursued under its name, it had already earned $2,000 from settlements in related cases it filed in 2022.  No. 22-572, D.I. 24 at 35:3–19, 41:6– 10; No. 22-573, D.I. 27 at 35:3–19, 41:6–10.[5]  And, as detailed in the Appendix attached hereto and based on public records filed with the United States Patent & Trademark Office (PTO), the State of Texas, and the federal courts' filing system (CM/ECF), it appears that Ms. LaPray has also profited financially from her role as

---

[5] Four of Backertop's 12 known patent infringement cases were not filed until after the November 10 hearing.  *See Backertop Licensing LLC v. Condeco Software, Inc.*, No. 22-10141 (S.D.N.Y. filed Nov. 29, 2022); *Backertop Licensing LLC v. Justworks, Inc.*, No. 22-10142 (S.D.N.Y. filed Nov. 29, 2022); *Backertop Licensing, LLC v. Exaktime Innovations, Inc.*, No. 22-8571 (C.D. Cal. filed Nov. 23, 2022); *Backertop Licensing, LLC v. Fantasia Trading LLC*, No. 22-2081 (C.D. Cal. filed Nov. 23, 2022).  As of November 10, 2022, two of the four cases Backertop filed in this Court had settled.  *See Backertop Licensing LLC v. Wyze Labs, Inc.*, No. 22-570 (D. Del. closed Aug. 23, 2022); *Backertop Licensing LLC v. Hampton Prods. Int'l Corp.*, No. 22-574 (D. Del. closed Aug. 8, 2022).

the managing member of at least six other LLCs, at least three of which appear, like Backertop, to be linked to IP Edge and Mavexar. (Ms. LaPray testified at the November 10 hearing that an IP Edge affiliate called Mavexar formed Backertop and offered her the opportunity to own it. When I asked Ms. LaPray if Mavexar "create[d] any other LLCs for [her]," she replied, "I do have a few more LLCs," but she was unable to recall the names of them. No. 22-572, D.I. 24 at 14:21–16:2; No. 22-573, D.I. 27 at 14:21–16:2.) Five of those LLCs filed at least 97 patent infringement cases in at least 13 different United States District Courts from 2016 through 2021. The administrative fees alone paid by the LLCs to file those cases—more than $38,000[6]—vastly exceed what it would cost for Ms. LaPray to travel to Delaware on July 20.

Finally, in considering Backertop's arguments concerning the childcare and financial burdens Ms. LaPray says she will suffer if compelled to attend the July 20 hearing in person, I am struck by the fact that Backertop has demanded jury trials in these actions. *See* No. 22-572, D.I. 1; No. 22-573, D.I. 1. Almost every week in this Courthouse we require ordinary citizens to make alternative childcare arrangements, put aside their family and job obligations, and forgo their daily

---

[6] The filing fee for a non-habeas civil action brought in a federal district court is $350, 28 U.S.C. § 1914(a) and the administration fee is $52, *District Court Miscellaneous Fee Schedule*, United States Courts (Dec. 1, 2020), https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

14

wages to serve as jurors for the paltry sum of $50 per day (i.e., less than $10 per hour). *See* 28 U.S.C. § 1871. We do so because litigants in this Court have a constitutional right to a jury trial—a central tenet of our judicial system. Backertop's business model is to file or threaten to file suits in that judicial system. I think it neither unfair nor unduly burdensome to require the sole natural person affiliated with Backertop to incur $300 in travel costs and make alternative childcare arrangements for a single day to attend a court hearing in cases Backertop initiated in this Court.

For these reasons, I will not reconsider the decision to require Ms. LaPray to appear in person at the July 20 hearing and I will deny her request for leave to appear by videoconference.

IV.

Backertop also cries foul that I "ha[ve] not articulated any basis for [the Court's] fraud allegation that was sprung on Backertop after the Court questioned [Ms. LaPray] at the [November 10, 2022] hearing" and for taking four months after Ms. LaPray testified at the November 10 hearing to issue an order requiring the production of documents. No. 22-572, D.I. 40-1 at 14; No. 22-573, D.I. 43-1 at 14.

As an initial matter, I have never alleged that Backertop—or any other entity or person associated with these cases or the other IP Edge- and Mavexar-related cases before me—committed fraud. I do, however, have serious concerns that

15

Backertop may have made inaccurate statements in filings with the Court; that
Backertop's counsel may have failed to comply with the Rules of Professional
Conduct; that real parties in interest, such as IP Edge and Mavexar, may have been
hidden from the Court and the defendants; and that those real parties in interest
may have perpetrated a fraud on the court by fraudulently conveying the patents
asserted in this Court to a shell LLC and filing fictious patent assignments with the
PTO, all designed to shield the real parties in interest from the potential liability
they would otherwise face by asserting in litigation the patents in question.  I
discussed these concerns generally and briefly at both a November 4, 2022 hearing
for other Mavexar-related cases attended by Mr. Chong and the November 10,
2022 hearing attended by Messrs. Chong and Burns and Ms. LaPray.  I explained
my concerns more fulsomely in *Nimitz*, 2022 WL 17338396, and *Backertop*, 2023
WL 3182084, and will not repeat those explanations here.

Backertop also takes issue with the fact that I did not order it to produce
documents related to these stated concerns until four months after the November
10 hearing.  *See* No. 22-572, D.I. 40-1 at 14 ("*Four (4) months* [after the
November 10 hearing], the Court issued an order requiring the production of
documents." (emphasis in original)); No. 22-573, D.I. 43-1 at 14 (same).  There is
irony in this criticism.  As I explained in *Backertop*, I had stated during the
November 10 hearing that I would issue a document production order, but I

16

refrained from doing so when Nimitz—another LLC created by IP Edge and/or

Mavexar—filed on November 16 a petition with the Federal Circuit for a writ of

mandamus to vacate a document production order identical in all material respects

to the order I was about to issue (and ultimately issued) in these cases.  2023 WL

3182084, at *3–4.  I thought at the time, and remain of the view, that it was

appropriate not to issue the production order in these cases until after the Federal

Circuit denied both Nimitz's petition for a writ of mandamus and its motion to stay

the issuance of the mandate pending an appeal to the Supreme Court.

## V.

Finally, Backertop criticizes this passage from the May 31, 2023

Memorandum Order:

> As it appears that Ms. LaPray may not currently be in
> communication with Backertop's counsel of record in
> these cases and because Ms. LaPray specifically cited her
> obligations as a paralegal for the Holmes Firm PC as one
> of the "reasons[] [she] do[es] not have the ability to
> travel to Delaware for this hearing in the foreseeable
> future," No. 22-572, D.I. 35-1 at 2; No. 22-573, D.I. 38-1
> at 2, I will also provide Ronald L. Holmes, Esquire, the
> managing partner of the Holmes Firm, with a copy of this
> Memorandum Order and, to explain the situation at hand,
> copies of *Nimitz Technologies LLC v. CNET Media, Inc.*,
> 2022 WL 17338396 (D. Del. Nov. 30, 2022) and the
> Memorandum Opinion and Order I issued on May 1 (No.
> 22-572, D.I. 32, 33; No. 22-573, D.I. 34, 35).  Doing so
> will ensure that Ms. LaPray receives notice of this
> Memorandum Order; and I suspect that Mr. Holmes will
> explain to Ms. LaPray that, contrary to the assertions in
> her declaration, his firm does not in fact "require [her]

17

physical presence" somewhere other than Delaware
"throughout the entire summer" such that she cannot
attend a hearing before this Court.

No. 22-572, D.I. 37 at 6–7 (alterations in original); No. 22-573, D.I. 40 at 6–7

(same).

The record, however, fully supports this decision. Mr. Chong had

represented to the Court that good cause existed to permit him to withdraw as

counsel because he had been "unable to effectively communicate with Client in a

manner consistent with good attorney-client relations." No. 22-572, D.I. 29 at 1–2;

No. 22-573, D.I. 31 at 1–2. Backertop's other counsel of record, Mr. Burns, had

told the clerk of the court that he "cannot represent the plaintiff any longer," and,

further, that he "cannot get a response from" Mr. Chong. No. 22-572, D.I. 31 at 1;

No. 22-573, D.I. 33 at 1. I inferred from these representations and the fact that

Backertop opposed counsels' withdrawal requests that Ms. LaPray may not have

been in communication with counsel. And, since Ms. LaPray specifically cited her

law firm obligations as one of the reasons she was unavailable "for the foreseeable

future," I deemed it appropriate to send copies of the May 31, 2023 Memorandum

Order and related opinions and orders to Ms. LaPray's law firm to ensure that she

received the Memorandum Order and, to the extent the firm was responsible for

her unavailability, inform her firm of the situation so that it might make

arrangements that would allow Ms. LaPray to attend a court hearing in these matters.

VI.

At Mavexar's request, Ms. LaPray agreed to act as the sole owner and managing member of the LLC that filed these actions. She is the only natural person through whom that LLC can act. Filings in this Court by that LLC and other LLCs created by IP Edge and/or Mavexar and the conduct of counsel and persons associated with those LLCs and with IP Edge and/or Mavexar have given rise to numerous concerns, including whether statements in the filings were accurate, whether counsel for the LLCs complied with their ethical and professional obligations, whether real parties in interest may have been hidden from the Court and defendants, and whether the real parties in interest may have perpetrated frauds on the Court, the PTO, and certain defendants. The Federal Circuit has ruled that these concerns "[a]ll . . . relate[] to potential legal issues in the[se] case[s], subject to the principle of party presentation," and that I have not sought information related to those concerns "in order to serve an interest in public awareness, independent of the adjudicatory and court-functioning interests reflected in the stated concerns." *In re Nimitz Techs. LLC*, 2022 WL 17494845, at *2 (Fed. Cir. Dec. 8, 2022) (internal quotation marks and citation omitted).

My May 31, 2023 Memorandum Order requires Ms. LaPray to attend a hearing on July 20, 2023 to address issues related to these concerns.  Backertop has not demonstrated that that Memorandum Order rests on a clear error of law.  Nor has it demonstrated that requiring Ms. LaPray to attend that hearing in person would be unfair or cause her undue hardship.

Accordingly, I will deny Backertop's motion for reconsideration and its request for leave to have Ms. LaPray appear by videoconference at the July 20, 2023 hearing.

The Court will enter an Order consistent with this Memorandum Opinion.

## APPENDIX

Ms. LaPray is identified in filings with the PTO as the managing member of

at least six other LLCs—Bartonfalls LLC, Magnolia Licensing LLC, Mirage IP

LLC, Burbank Technologies LLC, Sapphire Crossing LLC, and Tekvoke LLC.

*See* No. 22-572, D.I. 44 at 3, D.I. 44-1 at 4, D.I. 44-2 at 3, D.I. 44-3 at 29, D.I. 44-

4 at 7, D.I. 44-5 at 19, D.I. 44-6 at 4, D.I. 44-7 at 2; No. 22-573, D.I. 48 at 3,

D.I. 48-1 at 4, D.I. 48-2 at 3, D.I. 48-3 at 29, D.I. 48-4 at 7, D.I. 48-5 at 19,

D.I. 48-6 at 4, D.I. 48-7 at 2.  These filings are available on and were downloaded

from the PTO's online Patent Assignment Search Database, which "contains all

recorded Patent Assignment information from August 1980 to the present."  *See*

Patent Assignment Search, USPTO,

https://assignment.uspto.gov/patent/index.html#/patent/search (Under the "Quick

Lookup" tab, choose to "Look up by" Assignee name, enter each LLC's name into

the box labelled "Enter name or number," press search, click on the hyperlinked

option under "Assignee name," and then click on the pdf image under the heading

"Conveyance") (emphasis omitted).  Ms. LaPray is also identified by name on each

LLC's Public Information Report, which is available through the "Taxable Entity

Search" on the Texas Comptroller of Public Accounts website.  *See* Taxable Entity

Search, TEXAS COMPTROLLER OF PUBLIC ACCOUNTS,

https://mycpa.cpa.state.tx.us/coa/search.do (enter each LLC's name in the "Entity

Name" prompt, press search, click on the "details" link, and then go to the "Public

Information Report" tab to see Ms. LaPray's name).

At least three of these LLCs appear to be affiliated with IP Edge and

Mavexar. Backertop's patent assignment agreement was submitted to the PTO

under the name Lori LaPray with an email address of linhd@ip-edge.com. No. 22-

572, D.I. 44 at 1; No. 22-573, D.I. 48 at 1. This email address belongs to an IP

Edge and/or Mavexar employee named Linh Deitz. *See* No. 22-572, D.I. 41 at

30:2–14, 55:10–21; No. 22-573, D.I. 44 at 30:2–14, 55:10–21; *Nimitz Techs. LLC*

*v. CNET Media, Inc.*, 2022 WL 17338396, at *6, *11, *14–16, *18–20 (D. Del.

Nov. 30, 2022). Magnolia's, Burbank's, and Tekvoke's patent assignment

agreements were likewise submitted to the PTO under the name Lori LaPray with

an email address of linhd@ip-edge.com. No. 22-572, D.I. 44-2 at 1, D.I. 44-3 at

24, D.I. 44-4 at 2, D.I. 44-7 at 1; No. 22-573, D.I. 48-2 at 1, D.I. 48-3 at 24,

D.I. 48-4 at 2, D.I. 48-7 at 1.

A search for cases filed by these six LLCs in the United States Courts'

CM/ECF system identified the following 97 patent infringement cases:

1.  *Bartonfalls LLC v. Frontier Comm'ns Corp.*, No. 17-1836 (D. Del. filed
    Dec. 20, 2017).
2.  *Bartonfalls LLC v. American Broad. Cos., Inc.*, No. 16-1126 (E.D. Tex.
    filed Oct. 11, 2016).
3.  *Bartonfalls LLC v. Allrecipes.com, Inc.*, No. 16-1127 (E.D. Tex. filed
    Oct. 11, 2016).

4.   *Bartonfalls LLC v. Bloomberg, L.P.*, No. 16-1128 (E.D. Tex. filed Oct. 11, 2016).

5.   *Bartonfalls LLC v. CBS Interactive Inc.*, No. 16-1129 (E.D. Tex. filed Oct. 11, 2016).

6.   *Bartonfalls LLC v. Turner Broad. Sys., Inc.*, No. 16-1130 (E.D. Tex. filed Oct. 11, 2016).

7.   *Bartonfalls LLC v. Consumers Union of United States, Inc.*, No. 16-1131 (E.D. Tex. filed Oct. 11, 2016).

8.   *Bartonfalls LLC v. Discovery Comm'ns, Inc.*, No. 16-1132 (E.D. Tex. filed Oct. 11, 2016).

9.   *Bartonfalls LLC v. Forbes, Inc.*, No. 16-1133 (E.D. Tex. filed Oct. 11, 2016).

10.  *Bartonfalls LLC v. Advance Publ'ns, Inc.*, No. 16-1134 (E.D. Tex. filed Oct. 11, 2016).

11.  *Bartonfalls LLC v. Scripps Networks Interactive, Inc.*, No. 16-1135 (E.D. Tex. filed Oct. 11, 2016).

12.  *Bartonfalls LLC v. NBCUniversal Media LLC*, No. 16-1136 (E.D. Tex. filed Oct. 11, 2016).

13.  *Bartonfalls LLC v. Viacom, Inc.*, No. 16-1137 (E.D. Tex. filed Oct. 11, 2016).

14.  *Bartonfalls LLC v. New York Times Co.*, No. 16-1138 (E.D. Tex. filed Oct. 11, 2016).

15.  *Bartonfalls LLC v. Ziff-Davis LLC*, No. 16-1139 (E.D. Tex. filed Oct. 11, 2016).

16.  *Bartonfalls LLC v. Armstrong Tel. Co.*, No. 17-8596 (S.D.N.Y. filed Nov. 6, 2017).

17.  *Bartonfalls LLC v. RCN Telecom Servs. LLC*, No. 17-11349 (D.N.J. filed Nov. 6, 2017).

18.  *Mirage IP LLC v. AngioDynamics Inc.*, No. 17-377 (E.D. Tex. filed May 2, 2017).

19.  *Mirage IP LLC v. Biotronik, Inc.*, No. 17-378 (E.D. Tex. filed May 2, 2017).

20.  *Mirage IP LLC v. Cook Med. Techs., LLC,*, No. 17-379 (E.D. Tex. filed May 2, 2017).

21. *Mirage IP LLC v. MicroVention, Inc.*, No. 17-380 (E.D. Tex. filed May 2, 2017).

22. *Mirage IP LLC v. Oscor Inc.*, No. 17-381 (E.D. Tex. filed May 2, 2017).

23. *Mirage IP LLC v. Spectranetics Corp.*, No. 17-382 (E.D. Tex. filed May 2, 2017).

24. *Mirage IP LLC v. St. Jude Med., Inc.*, No. 17-383 (E.D. Tex. filed May 2, 2017).

25. *Mirage IP LLC v. Stryker Corp.*, No. 17-384 (E.D. Tex. filed May 2, 2017).

26. *Burbank Techs. LLC v. CenTrak, Inc*, No. 21-1391 (D. Del. filed Sept. 29, 2021).

27. *Burbank Techs. LLC v. Phyton, Inc.*, No. 21-1392 (D. Del. filed Sept. 29, 2021).

28. *Burbank Techs. LLC v. Abaco Sys., Inc.*, No. 21-1516 (D. Del. filed Oct. 27, 2021).

29. *Burbank Techs. LLC v. Dialog Semiconductor Inc.*, No. 21-1518 (D. Del. filed Oct. 27, 2021).

30. *Sapphire Crossing LLC v. Citizens Fin. Grp., Inc.*, No. 18-513 (D. Del. filed Apr. 4, 2018).

31. *Sapphire Crossing LLC v. Great W. Bancorp, Inc.*, No. 18-514 (D. Del. filed Apr. 4, 2018).

32. *Sapphire Crossing LLC v. Ibotta, Inc.*, No. 18-1716 (D. Del. filed Oct. 31, 2018).

33. *Sapphire Crossing LLC v. Robinhood Mkts., Inc.*, No. 18-1717 (D. Del. filed Oct. 31, 2018).

34. *Sapphire Crossing LLC v. Intuit Inc.*, No. 18-1856 (D. Del. filed Nov. 21, 2018).

35. *Sapphire Crossing LLC v. HealthEquity, Inc.*, No. 18-2072 (D. Del. filed Dec. 28, 2018).

36. *Sapphire Crossing LLC v. Kimberly-Clark Corp.*, No. 18-2073 (D. Del. filed Dec. 28, 2018).

37. *Sapphire Crossing LLC v. Visa Inc.*, No. 18-2074 (D. Del. filed Dec. 28, 2018).

38. *Sapphire Crossing LLC v. WEX Health, Inc.*, No. 18-2075 (D. Del. filed Dec. 28, 2018).

39. *Sapphire Crossing LLC v. Xero, Inc.*, No. 18-2076 (D. Del. filed Dec. 28, 2018).

40. *Sapphire Crossing LLC v. Kellogg Co.*, No. 19-415 (D. Del. filed Feb. 28, 2019).

41. *Sapphire Crossing LLC v WageWorks, Inc.*, No. 19-416 (D. Del. filed Feb 28, 2019).

42. *Sapphire Crossing LLC v. Netsmart Techs., Inc.*, No. 19-1401 (D. Del. filed July 29, 2019).

43. *Sapphire Crossing LLC v. Robinhood Mkts., Inc.*, No. 19-1402 (D. Del. filed July 29, 2019).

44. *Sapphire Crossing LLC v. Kofax, Inc.*, No. 20-149 (D. Del. filed Jan. 30, 2020).

45. *Sapphire Crossing LLC v. Expensify, Inc.*, No. 20-726 (D. Del. filed May 29, 2020).

46. *Sapphire Crossing LLC v. HubSpot, Inc*, No. 20-1134 (D. Del. filed Aug. 27, 2020).

47. *Sapphire Crossing LLC v. Infusion Software, Inc.*, No. 20-1135 (D. Del. filed Aug. 27, 2020).

48. *Sapphire Crossing LLC v. Sansan, Inc.*, No. 20-1136 (D. Del. filed Aug 27, 2020).

49. *Sapphire Crossing LLC v. Receipt Bank Ltd.*, No. 20-1308 (D. Del. filed Sept. 29, 2020).

50. *Sapphire Crossing LLC v. Neat Co., Inc.*, No. 20-1309 (D. Del. filed Sept. 29, 2020).

51. *Sapphire Crossing LLC v. Rydoo Inc.*, No. 21-296 (D. Del. filed Feb. 26, 2021).

52. *Sapphire Crossing LLC v. Shoeboxed Inc.*, No. 21-297 (D. Del. filed Feb 26, 2021).

53. *Sapphire Crossing LLC v. Wave Fin. USA Inc.*, No. 21-474 (D. Del. filed Mar. 30, 2021).

54. *Sapphire Crossing LLC v. Workday, Inc.*, No. 21-479 (D. Del. filed Mar. 31, 2021).

55. *Sapphire Crossing LLC v. Acumatica, Inc.*, No. 21-602 (D. Del. filed Apr. 28, 2021).

56. *Sapphire Crossing LLC v. Contacts Plus LLC*, No. 21-606 (D. Del. filed Apr. 29, 2021).

57. *Sapphire Crossing LLC v. Nagarro, Inc.*, No. 21-2781 (S.D.N.Y filed Mar. 31, 2021).

58. *Sapphire Crossing LLC v. Algoworks Sols., Inc.*, No. 19-4368 (N.D. Cal. filed July 30, 2019).

59. *Sapphire Crossing LLC v. Abbyy Prod. LLC*, No. 20-3590 (N.D. Cal. filed May 29, 2020).

60. *Sapphire Crossing LLC v. Evernote Corp.*, No. 20-3593 (N.D. Cal. filed May 29, 2020).

61. *Sapphire Crossing LLC v. Idatix Corp.*, No. 20-228 (M.D. Fla. filed Jan. 29, 2020).

62. *Sapphire Crossing LLC v. London Comput. Sys., Inc.*, No. 20-407 (S.D. Ohio filed May 21, 2020).

63. *Sapphire Crossing LLC v. Groupon, Inc.*, No. 18-7277 (N.D. Ill. filed Oct. 31, 2018).

64. *Sapphire Crossing LLC v. Concur Techs., Inc.*, No. 19-1442 (N.D. Ill. filed Feb. 28, 2019).

65. *Sapphire Crossing LLC v. Invs. Bancorp, Inc.*, No. 18-5527 (D.N.J. filed Apr. 5, 2018).

66. *Sapphire Crossing LLC v. Lakeland Bancorp, Inc.*, No. 18-5528 (D.N.J. filed Apr. 5, 2018).

67. *Sapphire Crossing LLC v. Valley Nat'l Bancorp*, No. 18-5529 (D.N.J. filed Apr. 5, 2018).

68. *Sapphire Crossing, LLC v. NPD Grp., Inc.*, No. 18-7263 (E.D.N.Y. filed Dec. 20, 2018).

69. *Sapphire Crossing LLC v. Blackhawk Bancorp, Inc.*, No. 18-291 (W.D. Wis. filed Apr. 23, 2018).

70. *Sapphire Crossing LLC v. Woodford Bancshares, Inc.*, No. 18-293 (W.D. Wis. filed Apr. 23, 2018).

71. *Tekvoke LLC v. Dialogtech Inc.*, No. 20-452 (D. Del. filed Mar. 31, 2020).

72. *Tekvoke LLC v. Fuze, Inc.*, No. 20-453 (D. Del. filed Mar. 31, 2020).

73. *Tekvoke LLC v. Grandstream Networks, Inc.*, No. 20-454 (D. Del. filed Mar. 31, 2020).

74.   *Tekvoke LLC v. Voyant Comm'ns, LLC*, No. 20-455 (D. Del. filed Mar. 31, 2020).

75.   *Tekvoke LLC v. Cable One, Inc.*, No. 21-440 (D. Del. filed Mar. 25, 2021).

76.   *Tekvoke LLC v. Jive Software, Inc.*, No. 21-487 (D. Del. filed Mar. 31, 2021).

77.   *Tekvoke LLC v. Essensys, Inc.*, No. 21-1100 (D. Del. filed July 29, 2021).

78.   *Tekvoke LLC v. FirstLight Fiber, Inc.*, No. 21-1101 (D. Del. filed July 29, 2021).

79.   *Tekvoke, LLC v. Digium, Inc.*, No. 19-2205 (D. Del. filed Nov. 26, 2019).

80.   *Tekvoke, LLC v. Vonage Holdings Corp.*, No. 19-2206 (D. Del. filed Nov. 26, 2019).

81.   *Tekvoke, LLC v. Syndeo, LLC*, No. 20-1475 (D. Del. filed Oct. 29, 2020).

82.   *Tekvoke, LLC v. Windstream Holdings, Inc.*, No. 20-1476 (D. Del. filed Oct. 29, 2020).

83.   *Tekvoke, LLC v Yeastar USA, Inc.*, No. 20-1477 (D. Del. filed Oct. 29, 2020).

84.   *Tekvoke, LLC v. IDT Corp.*, No. 20-1772 (D. Del. filed Dec. 28, 2020).

85.   *Tekvoke, LLC v. AireSpring, Inc.*, No. 21-259 (D. Del. filed Feb. 23, 2021).

86.   *Tekvoke, LLC v. Intrado Corp.*, No. 21-260 (D. Del. filed Feb. 23, 2021).

87.   *Tekvoke LLC v. Teo Comm'ns Inc*, No. 21-1018 (W.D. Wash. filed July 29, 2021).

88.   *Tekvoke LLC v. Cincinnati Bell Tech. Sols. LLC*, No. 21-344 (S.D. Ohio filed May 20, 2021).

89.   *Tekvoke LLC v. Block Comm'ns, Inc.*, No. 21-422 (N.D. Ohio filed Feb. 23, 2021).

90.   *Tekvoke LLC v. Genesys Telecomms. Lab'ys., Inc.*, No. 20-7645 (N.D. Cal. filed Oct. 30, 2020).

91.   *Tekvoke, LLC v. Brekeke Software, Inc.*, No. 20-9482 (N.D. Cal. filed Dec. 31, 2020).

92.   *Tekvoke, LLC v. Dialpad, Inc.*, No. 19-7733 (N.D. Cal. filed Nov. 24, 2019).

93.   *Tekvoke, LLC v. 8x8, Inc.*, No. 19-7734 (N.D. Cal. filed Nov. 24, 2019).

94. *Tekvoke, LLC v. RingCentral, Inc.*, No. 19-7735 (N.D. Cal. filed Nov. 24, 2019).

95. *Tekvoke LLC v. Nextiva Inc.*, No. 20-2473 (Arizona filed Dec. 23, 2020).

96. *Tekvoke, LLC v. 3CX USA Corp.*, No. 20-721 (M.D. Fla. filed Mar. 27, 2020).

97. *Tekvoke, LLC v. PayG, LLC*, No. 20-722 (M.D. Fla. filed Mar. 27, 2020).