IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BACKERTOP LICENSING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-572-CFC |
| | ) | |
| CANARY CONNECT, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| BACKERTOP LICENSING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-573-CFC |
| | ) | |
| AUGUST HOME, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF OBJECTION TO AND NON-PARTICIPATION IN
JUDICIAL INQUISITION**

Former Plaintiff Backertop Licensing LLC ("Backertop" or "Plaintiff") hereby gives notice of its objection to the Judicial Inquisition initiated and conducted by the Court, and of its declining to participate any further in such inquisition[1], in which non-party Lori LaPray joins, and in support thereof states as follows:

**BACKGROUND FACTS**

Backertop filed a Complaint for patent infringement against Canary Connect, Inc. ("Canary") on April 28, 2022. D.I. 1 (22-cv-00572-CFC). Plaintiff also filed a Complaint for patent infringement against August Home, Inc. ("August Home") (Canary and August Home collectively

---

[1] Backertop has instructed its attorneys not to produce any documents. The undersigned has no such documents.

referred to herein as "Defendants") on the same day. D.I. 1 (22-cv-00573-CFC). Both complaints alleged infringement of U.S. Patent Nos. 9,332,385; 9,654,617; 10,477,011; and 10,728,382 (the "Backertop Patents"). D.I. 1-1.

Each of the complaints affirms that Backertop is the named assignee of the Backertop Patents with the right to enforce the patents. 1:22-cv-00572 D.I 1; 1:22-cv-00573 D.I. 1. That Backertop is the lawful assignee of the Backertop Patents is reflected in the public records of the United States Patent and Trademark Office as reflected in https://assignment.uspto.gov/patent/index.html#/patent/search, of which the Court can take judicial notice. *See, e.g., Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010).

On April 18, 2022, the Court issued two standing orders. The first Standing Order is a "Standing Order Regarding Disclosure Statements Required by Federal Rule of Civil Procedure 7.1" and reads as follows:

> At Wilmington on this Eighteenth day of April in 2022, it is HEREBY ORDERED in all cases assigned to Judge Connolly where a party is a nongovernmental joint venture, limited liability corporation, partnership, or limited liability partnership, that the party must include in its disclosure statement filed pursuant to Federal Rule of Civil Procedure 7.1 the name of every owner, member and partner of the party, proceeding up the chain of ownership until the name of every individual and corporation with a direct or indirect interest in the party has been identified.

The second order is entitled "Standing Order Regarding Third Party Litigation Funding Arrangements" and requires disclosure of third party funders "where a party has made arrangements to receive from a person or entity that is not a party (a "Third-Party Funder") funding

for some or all of the party's attorney fees and/or expenses to litigate this action on a <u>non-recourse</u>[2]

basis in exchange for (1) a financial interest that is contingent upon the results of the litigation or

(2) a non-monetary result that is not in the nature of a personal loan, bank loan, or insurance."

(Emphasis added). The Court's stated purpose of the standing orders is to avoid judicial conflicts

that would call for disqualification. *Nimitz Technologies LLC v. CNET Media, Inc.*, 2022 WL

17338396 at *4 (D. Del. Nov. 30, 2022) ("It makes sense…[to have] additional disclosure

requirements, as it is critically important that federal judges do not suffer from conflicts that could

call into question their impartiality").

Both the cases against Canary Connect, Inc. and August Home, Inc. were filed on April 28,

2022, after the issuance of these Standing Orders.

Backertop filed its 7.1 statements upon the filing of these cases. 1:22-cv-00572 at D.I. 4;

1:22-cv-00573 at D.I. 4. On September 2, 2022, Backertop amended its 7.1 disclosure statements

to disclose Lori LaPray as the owner of Backertop. 1:22-cv-00572 at D.I. 16; 1:22-cv-00573 at

D.I. 19.

Regarding the standing order on third-party funding, Backertop receives third-party

---

[2] The ordinary distinction between "recourse basis" and "non-recourse basis" is reflected in, for
example, publications of the United States Internal Revenue Service:

> There are two types of debts: recourse and nonrecourse. A recourse debt holds the
> borrower personally liable. All other debt is considered nonrecourse.

(https://apps.irs.gov/app/vita/content/36/36_02_020.jsp). *See also Bennett v. Donovan*, 703 F.3d
582, 585 (D.C. Cir. 2013) ("Reverse mortgages are generally non-recourse loans, meaning that if
a borrower fails to repay the loan when due, and if the sale of the home is insufficient to cover the
balance, then the lender has no recourse to any of the borrower's other assets"); *Barnum v.
Millbrook Care Ltd. Partnership*, 850 F.Supp. 1227, 1235 n.6  (S.D.N.Y. 1994), *aff'd mem.,* 43
F.3d 1458 (2nd Cir. 1994) ("A non-recourse loan is defined in Black's Law Dictionary as: 'Type
of security loan which bars the lender from action against the borrower if the security value falls
below the amount required to repay the loan,'" *citing*  Black's Law Dictionary 953 (5th ed. 1979)).

funding on a recourse basis, not on a non-recourse basis. 1:22-cv-00572 D.I. 23; 1:22-cv-00573 D.I. 26. Accordingly, this Standing Order did not require any action from Backertop.

On September 12, 2022, the Court *sua sponte* issued a Memorandum Order setting a hearing to determine if Plaintiff had "complied with the Court's standing order regarding third-party litigation funding," ordering Ms. Lori LaPray ("LaPray"), the owner of Plaintiff, to attend the hearing to be subject to questioning by the Court. D.I. 18.[3]  The Court did not assign this inquiry to a Magistrate Judge or a Special Master or appoint private counsel as a prosecutor. Instead, the Court took it upon itself to investigate, including obtaining documents from parties and examining witnesses.

On September 14, 2022, and September 21, 2022, prior to the filing of an answer or motion for summary judgment, Plaintiff filed Notices of Dismissal under Fed. R. Civ. P. Rule 41(a)(1)(A)(i), dismissing the cases without prejudice. D.I. 21-22.

On October 5, 2022, Backertop filed a letter in both cases to Judge Connolly explaining that it "does not receive from a person or entity that is not a party funding for some or all of the party's attorneys' fees and/or expense to litigate this action on a non-recourse basis. All funding received by Plaintiff for this litigation, including the advance of any expenses, is provided on a recourse basis." D.I.  23. In the letter, Backertop sought clarification and guidance from the Court so it can bring any additional documents or evidence to the evidentiary hearing, so it may be fully responsive and ensure that the requested information is available to the Court. *Id.*  The Court did not respond to Backertop's disclosure regarding there being no non-recourse funding, did not respond to Backertop's request for clarification, did not cancel the evidentiary hearing, and did not

---

[3]     Unless otherwise noted, all references to the docket (D.I. #) henceforth shall refer to the docket of *Backertop v. Canary Connect, LLC*, 1:22-cv-00572-CFC.

4

terminate the already dismissed cases.

Lori LaPray, a non-party, voluntarily attended the evidentiary hearing on November 10, 2022, in a good faith attempt to satisfy the Court's concerns. Ms. LaPray missed two (2) days of work to fly to Delaware, to appear in person and give testimony. D.I. 24.

The Court conducted the hearing in a manner of a prosecuting attorney examining an adverse witness at trial, as well as a judge, asking leading questions at times, while at the same time preventing Backertop's attorney from approaching the bench, and overruling an objection from Backertop's counsel. *Id.* at 12:13-47:5.

Although the stated purpose for the hearing was to determine whether or not Backertop had complied with the third-party funding order, the Court never questioned Ms. LaPray as to whether or not Backertop received funding on a recourse or non-recourse basis. The Court also never questioned Backertop's counsel about whether Backertop received funding on a recourse or non-recourse basis, but only asked counsel to confirm his understanding of the difference between recourse and non-recourse funding. *Id.* at 5:17 – 11:11. Ms. LaPray did confirm that Backertop would be responsible for costs and liabilities. *Id.* 30:17 – 31:24.

Despite the order for the hearing stating that the purpose of the hearing was to investigate third-party litigation funding, most of the district court's questioning of Ms. LaPray had nothing to do with litigation funding. Instead, the Court's questions covered topics such as Ms. LaPray's employer, her role at work, her husband, her husband's line of work, how she became owner of Backertop, the formation of Backertop, communications with Mavexar, the consulting agreement between Backertop and Mavexar, the patent purchase agreement Backertop entered into, assets owned by Backertop, communications with Backertop's counsel, how costs and fees are covered in the litigation, liabilities of Backertop, financial information relating to Backertop, parties having

5

a financial interest associated with Backertop settlements, Backertop's address information, the complaints in the lawsuit, details regarding Lori's travel arrangements to come to Delaware for the hearing, and communications regarding preparing for the hearing itself. *Id.* at 12:13-47:5.

Ms. LaPray testified that her husband had been an independent contractor for Mavexar, and he presented her with an opportunity to own assets, and she agreed. *Id.* at 14:6-10. Ms. LaPray testified that she is the 100% sole owner of Backertop, *id.* at 33:11-16, and the final decisionmaker regarding all settlement agreements into which Backertop enters and all lawsuits filed on behalf of Backertop. *Id.* at 22:10-21. Ms. LaPray testified that she read and signed on behalf of Backertop, the Patent Purchase Agreement. *Id.* at 30:4-16.

At the hearing, the Court stated to Backertop's counsel that it was "not going to be asking for privileged information…, but if you have any concerns you may stand up." *Id.* at 11:21-24. Mr. Burns later objected to a line of questioning directed to Ms. LaPray's preparation for the hearing itself on the grounds of the common interest privilege, which the Court overruled. *Id.* at 43:8-44:8. During its questioning, the Court also directed Ms. LaPray to not consult with Backertop counsel before providing her answer to a leading question posed by the Court, and thereafter denied Backertop's counsel's request to responsively address the Court. *Id.* at 28:14-24.

At the conclusion of the hearing, the Court did not voice any concern that Ms. LaPray's testimony or any of the documents submitted to the Court during the hearing evidenced any third-party "funding for some or all of the party's attorney fees and/or expenses to litigate this action on a non-recourse basis," which was the ostensible issue for which the hearing was ordered. *Id.* at 47:6-53:8. Instead, the Court lamented a dissatisfaction raised in "parallel proceedings" (*id.* at 53: 4-7) regarding the lack of existing rules governing the disclosure of persons with interest in the litigation, concerning "the integrity of our judicial system, the abuse of our courts, and potential

abuse, lack of transparency as to who the real parties before the Court are, about who is making decisions in these types of litigation." *See* Hearing Transcript, pg. 107, lines 14-19, 1:22-cv-00244-CFC D.I. 20.

While being critical of what it asserted was an abuse of the judicial system, the Court did not explain that concern, and, more importantly, did not cite to any laws or rules that the Court thought might have been breached by Backertop. Even if it were true that there exists a "lack of transparency as to who the real parties before the Court are, about who is making decisions in these types of litigation," the Court could not cite any laws or rules that required a party to disclose what the Court deemed to be "the real parties before the Court" or "who is making decisions in these types of litigation."  *See* D.I. 24.

On March 31, 2023, the Court entered a Memorandum Order ("the Production Order"). This Production Order began as follows:

> [w]hereas the testimony of witnesses and representations of counsel at the November 10, 2022 hearing and other conduct by counsel and entities in this case and other cases in this Court give rise to concerns about the accuracy of statements in filings made by Plaintiff Backertop Licensing LLC (Backertop), whether counsel complied with the Rules of Professional Conduct and orders of this Court; whether there are real parties in interest such as Mavexar and IP Edge and have been hidden from the Court and Defendants, whether those real parties in interest perpetrated a fraud on the court by fraudulently conveying to a shell LLC patents asserted in this court and filing fictitious patent assignments with the United States Patent and Trademark Office designed to shield those parties from the potential liability they would otherwise face in asserting patents in litigation in this Court, *see Nimitz Techs. LLC v. CNET Media, Inc.*, No. 21-1247, D.I. 32.

The Production Order requested privileged communications between Backertop, its agent, and counsel, and documents explicitly covered by the attorney-client privilege, attorney work product doctrine, and common interest privileges. D.I. 25 The Production Order requested documents that were beyond the scope of the Court's Standing Orders regarding 7.1 disclosure statements and third-party funding, including attorney retention agreements, the formation of

7

Backertop, the acquisition of patents by Backertop, communications regarding risk and liability, the settlement of the cases, the dismissal of the cases, communications regarding the November 10, 2022 hearing, including travel expenses and arrangements, monthly statements of bank accounts, documents regarding Backertop's address information, and a request for a declaration regarding assets owned by Backertop on various dates. *Id.*

The Production Order expanded the Court's investigation well beyond the scope of the Standing Orders, and cited the *Nimitz Technologies LLC v. CNET Media, Inc.* case, specifically to a November 30, 2022, 78-page memorandum order issued by the Court *sua sponte* ("Nimitz Order"). The Nimitz Order was submitted by the Court to the Federal Circuit, as a responsive pleading to a Petition for a Writ of Mandamus regarding a document production in Nimitz substantially similar in scope to the Production Order of Backertop. In the Nimitz Order, which has been repeatedly cited and incorporated by the Court in the Backertop cases (D.I. 31 at 2), the Court stated that "the Memorandum order [in Nimitz] does not require Nimitz to docket these records or otherwise make them public. Thus, Nimitz is free to submit and to publicly file at the time of its production of the records in question an assertion that the records are covered by the attorney-client privilege and/or work product doctrine and request that for that reason (and perhaps other reasons) the Court maintain the records under seal." 2022 WL 17338396 (D. Del. Nov. 30, 2022). The Federal Circuit relied on this in denying Mandamus to Nimitz Technologies, LLC. *In re: Nimitz Technologies LLC*, 2023-103 at D.I. 44 at 5 (Fed. Cir. Dec. 8, 2022) ("The district court, however, has made clear that its order 'does not require Nimitz to docket these records or otherwise make them public' and is 'free to submit and to publicly file at the time of its production of the records in question an assertion that the records are covered by the attorney-client privilege and/or work product doctrine and a request that for that reason (and perhaps other reasons) the Court

maintain the records under seal' ECF No. 42-1 at 77. Under such circumstances, Nimitz has not shown that mandamus is its only recourse to protect privileged materials. Nor has Nimitz shown a clear right to preclude in camera inspection under these circumstances").

Additionally in the Nimitz Order that was incorporated by the Court in the Backertop cases, the Court disclosed research it conducted in furtherance of its investigation. The Court engaged in a lengthy discussion of cases unrelated to any of the cases where Mavexar was the consulting company under investigation by the Court, namely the *Longbeam Technologies LLC v Amazon.com, Inc.* case and the *Missed Call* cases. 2022 WL 17338396 at *10-22. Relying on an "RPX" article, the Court connected the entities that use Mavexar as a consulting company to "IP Edge" and noted that none of the entities it is investigating (including Backertop) disclosed any third-party funding with IP Edge. *Id.* at *26. Using further "research" from one of the Court's law clerks, the Court found that the patent assignments in *Nimitz* and *Mellaconic* had provided an email to the PTO of "linhd@ip-edge.com." *Id.* at *26-27. Accordingly, the Court expressed concerns that such entities may have not complied with the Third-Party Funding Order, because they did not disclose "IP Edge," and, thus, the Court issued evidentiary hearing orders in these cases, including Backertop. *Id.* at *26-27. After discussing the *Nimitz* and *Mellaconic* hearings, the Court stated its concerns: "The records sought are all manifestly relevant to addressing the concerns I raised during the November 4 hearing. Lest there be any doubt, those concerns are: Did counsel comply with the Rules of Professional Conduct? Did counsel and Nimitz comply with the orders of this Court? Are there real parties in interest other than Nimitz, such as Mavexar and IP Edge, that have been hidden from the Court and the defendants? Have those real parties in interest perpetrated a fraud on the court by fraudulently conveying to a shell LLC the #328 patent and filing a fictitious patent assignment with the PTO designed to shield those parties from potential liability they would

otherwise face in asserting the #328 patent in litigation?" *Id.* at *75-76. The Court did not cite to its originally stated purpose for its Standing Orders regarding avoiding judicial conflicts. Nor did it give Backertop prior notice of this independent research to allow Backertop to respond.

On April 3, 2023, Backertop filed a motion to set aside the Production Order. D.I. 26. Backertop argued that the cases were dismissed, and, thus, the Court lacked jurisdiction to issue the Production Order; that the Court has not articulated any recognized collateral issues that support issuance and enforcement of the Production Order; and that the Order seeks information that is protected by the Attorney-Client Privilege, namely that the Court only has authority to order the production of privileged documents for *in camera* inspection for the purpose of determining privilege, but not for use in its own investigation, as the Production Order requires. D.I. 27.

Although both cases were voluntarily dismissed in September 2022, on April 21, 2023, Backertop and Defendant Canary Connect filed a joint stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). Later, on June 20, 2023, Plaintiff and Defendant August Home filed a joint stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).

On April 28, 2023, Plaintiff filed a Motion to Stay Compliance with the Order Pending Ruling on Plaintiff's Motion to Set Aside the Court's March 31, 2023, Order. D.I. 30. On May 1, 2023, the Court denied the motion to set aside, mooted the motion to stay compliance, and required compliance with the Production Order no later than May 9, 2023. D. I. 32 ("May Order"). In this May Order, the Court noted that both Messrs. Burns and Chong were seeking to withdraw from these actions and set an in-person hearing on the motions to withdraw for June 8, 2023. *Id.* The Court ordered Messrs. Burns and Chong, and Ms. LaPray, to attend the hearing in-person. *Id.* Additionally, the Court gave reasons for denying the motion to set aside, but notably did not address the argument that the Court lacks the authority to order privileged documents to be

10

produced for use in its own investigation, and did not rule whether or not a crime/fraud exception applied to justify the production.  *See id.* at 14-15.

On May 9, 2023, Plaintiff delivered to the Court all of its document production within its custody, control and possession in compliance with the Court's Production Order, as amended on May 1, 2023. D.I. 36. Following the Federal Circuit guidance in its denial of the *Nimitz* petition for writ of mandamus and the Court's representation in the *Nimitz* Order (which was incorporated by the Court in the Backertop cases. D.I. 31 at 2) that it would keep privileged documents *in camera*, the cover pleading for this production stated, in part: "Some documents are marked "Confidential," others "Confidential Attorney-Client Privilege," and/or others are marked "Confidential – Common Interest Attorney Client Privilege."  Backertop respectfully requests that all such documents and their content remain *in camera* and not be made public."

Concurrently, Plaintiff filed a Notice of Unavailability of Ms. Lori LaPray Regarding the June 8, 2023, Hearing and Request to Appear Telephonically ("Notice"). D.I. 35. In the Notice and attached sworn declaration, she explains that, due to her work, family obligations, and pre-set travel that she cannot attend the June 8, 2023, hearing, nor can she attend a hearing in Delaware at any point in the foreseeable future. D.I. 35-1. Additionally, she respectfully requested the Court to allow her to appear telephonically. *Id.* She also noted, for the record, that her position concerning the withdrawal motions is "simply that [Backertop] cannot be left without counsel to represent Backertop in these matters. Backertop needs to have an attorney who can provide counsel, appear at hearings, and file documents. Other than this, Backertop has no opinion on the respective motions to withdraw." *Id.*

On May 31, 2023, the Court issued an Order in response to Plaintiff's May 9, 2023, Notice. D.I. 37. The Court excused Ms. LaPray from attending the June 8, 2023, denied her request to

11

appear telephonically, and set an additional hearing for July 20, 2023. *Id.* This time, the Court noted that the hearing would be not only concerning withdrawal, but also regarding Plaintiff's May 9, 2023, document production. *Id.* The Court again ordered that she appear in-person in Delaware. *Id.* The Court noted that if she is unavailable to travel to Delaware to appear on July 20, 2023, that "she needs to submit to the Court no later than June 7, 2023 affidavits and supporting documentation demonstrating exactly why that is the case and propose a range of alternative dates in July for a hearing." *Id.* Additionally, the Court noted that it would (and in fact did) send a copy of this order, an order from the *Nimitz Technologies LLC v. CNET Media, Inc.* case, and an order issued in the Backertop cases on May 1, 2023, to her employer, Mr. Ronald L. Holmes. *Id.* The Court stated, "[d]oing so will ensure that Ms. LaPray receives notice of this Memorandum Order; and I suspect that Mr. Holmes will explain to Ms. LaPray that, contrary to the assertions in her declaration, his firm does not in fact 'require [her] physical presence' somewhere other than Delaware "throughout the entire summer" such that she cannot a hearing before this Court." *Id.*[4]

On June 7, 2023, Backertop filed its Motion for Reconsideration of the Court's May 31, 2023, Order and Leave for Ms. LaPray to Appear at the Court's July 20, 2023, Hearing via Videoconference. D.I. 40. The Motion argued that the Court lacks authority to order Ms. LaPray's in-person appearance as the Court must issue a subpoena to compel her attendance, and a valid subpoena, under the "party officer" rule of FRCP 45(c)(1)(B)(i), can only compel her physical attendance to a hearing in the State of Texas. *Id.* It further argued that in any event, Ms. LaPray is unavailable to attend the July 20 hearing in person and is unable to travel to Delaware; that she has already testified in-person before the Court; that the Court permits telephone and videoconference

---

[4]     The Court did not explain why it did not entrust counsel for Backertop with conveying its message to the employer instead of contacting the employer directly.

hearings and Ms. LaPray is available to appear by videoconference; that the Court has made a general accusation of "fraud" without any specificity; and that the Court contacted a non-party, Ms. LaPray's employer, in the hopes of the employer influencing her to attend a hearing in Delaware that she cannot attend in-person. *Id.* Ms. LaPray also submitted a sworn declaration in support of this Motion, notifying the Court that its unauthorized communication with her employer has disrupted her place of employment, and caused her panic and fear that she could lose her job. D.I. 40-3. She further noted concern that Judge Connolly would continue communication with her employer in a manner that would jeopardize her employment and potential employability, and that she is living in a sense of fear and intimidation by the court. *Id.* She also contended that Judge Connolly's expectation of her employer to "explain" what she can and cannot do is textbook gender harassment and discrimination and promotes a work culture of gender harassment in the form of "mansplaining." *Id.*

On June 8, 2023, the Court held the hearing open to the public for the stated purpose of hearing the motions to withdraw. D.I. 41. After a brief opening about withdrawal, the Court made it clear that the remainder of the hearing would be for a different purpose: "And what I'm going to focus on this morning, since I have you all here, and Ms. LaPray isn't, issues of attorney conduct that clearly fall within the Court's inherent authority. And then I also need to explore the inadequacy, or the, I should say, the apparent inadequacy of the production. And I don't expect you to be able to answer all those questions today, but at least you can explore it further when you leave here." *Id.* at 17:15-23. The Court then proceeded to use the remainder of the hearing on topics that were never noticed to Backertop, including topics covering the Backertop production. Prior to questioning regarding the Backertop production, Mr. Burns stated to the Court that he did not review the production (*id.* at 14:5) due to him leaving his firm prior to the production to the Court

(*id.* at 14:5-10), and the Court did not disclose to Mr. Burns that most documents that were produced on May 9 were marked as privileged. The Court discussed at length documents marked by Backertop as privileged, including reading aloud excerpts from documents marked as privileged. The Court did not keep them *in camera* as it stated it would do in the *Nimitz* order (which the Court incorporated in Backertop), and to which Backertop followed the same outlined procedure: *See id.* at 20:19-22:4; 25:13-17; 28:5-24; 30:2-31:16; 33:24-35:12; 36:8-19; 37:17-25; 41:18-42:20; 43:23-44:25; 47:13-23; 64:23-25; 67:2-3; 67:7-14; 67:20-68:1; 68:7-11; 70:5; 70:9-14; 72:23; 73:11-13; 80:13-19; and 93:25-95:14.

An online blog about patent litigation in Delaware published a report about what was discussed at the hearing about the document production. The blog reported "the Court went document-by-document through some of the production that the Mavexar entities had supplied to the Court. The documents touched on many interesting things, including suggesting that some kind of agreement or contractual obligation between Mavexar and the patents' original owners continued to influence strategy even after they were gone." https://ipde.com/blog/2023/06/09/drama-court-rejects-mavexar-attorneys-efforts-to-withdraw-grills-them-on-efforts-to-hide-mavexar-from-court/.

After reading aloud excerpts from documents marked as privileged, the Court stated at the hearing that it did not believe the documents were privileged (*Id.* at 32:7-9) but did not make a ruling as to whether the documents were privileged or otherwise afford Backertop an opportunity to appeal such a ruling before any such public disclosure of the documents. *Id.* at 18:2-109:15. The hearing, which was only noticed for the motions to withdraw, lasted approximately three and a half hours, including the 30-minute lunch break in-between. *Id.* at 2:18-19

On June 12, 2023, the Court made available the transcript from the June 8, 2023, hearing. D.I. 41. On June 14, 2023, Backertop filed a motion to seal the June 8, 2023, transcript. On June 20, 2023, the Court denied the motion as moot as the Court had already made the transcript public at a public terminal in the Courthouse on June 12, 2023, and Messrs. Burns and Chong did not ask during the hearing for an opportunity to redact the transcript. D.I. 43.

On July 10, 2023, the Court denied Backertop's Motion for Reconsideration, relying solely on the Court's inherent authority for ordering Ms. LaPray to appear in person to Delaware, and holding that Fed. R. Civ. P. 45 does not apply to a district judge issuing *sua sponte* an order to compel a person's attendance in court. D.I. 45. The Court also denied Ms. LaPray's request to appear via videoconference, citing to the Court's need to be in the best position to assess Ms. LaPray's credibility, and discounting Ms. LaPray's childcare and financial burdens associated with traveling to Delaware. *See id.*

## I.   THE COURT HAS EXCEEDED ITS JURISDICTION BY ENGAGING IN A JUDICIAL INQUSITION.

"Inquisitorial proceedings, where the judge takes an active role in ferreting out the truth, may be the rule elsewhere in the world, but they are decidedly alien to our way of thinking." U.S. v. Thompson, 827 F.2d 1254, 1258 (9th Cir. 1987). *See also Kisor v. Wilkie,* 139 S.Ct. 2400, 2413 (U.S. 2019) ("Courts cannot conduct factual investigations"); *Coleman v. Brown,* 2018 WL 9848294 at (E.D. Cal. Dec. 13, 2018) ("The court simply cannot itself conduct the initial factual investigation into allegations it may adjudicate in subsequent adversarial proceedings.…").

This Court has stated concerns of wrongdoing (and repeatedly expanded the concern of such of wrongdoing), and subsequently has set its own procedural schedule, ordered production of documents it wants to review (irrespective of privilege), called witnesses without prior notice on topics (and repeatedly expanded the subject matter of hearings without prior notice), and

15

interrogated witnesses as if stepping into a role of a prosecutor, all to investigate its concerns of wrongdoing. Citing to "inherent authority" as its rationale for justifying an inquisitorial proceeding, the Court has abandoned the adversarial framework that is a hallmark of our legal system and that affords constitutional safeguards to those facing potential sanctions, including criminal prosecution.

In furtherance of its inquisitorial proceeding, the Court held an evidentiary hearing for the ostensible purpose of determining a party's compliance with its standing order on third party funding, but (1) ignored the party's prior attempt to explain why it had complied with the Court's third-party funding standing order; (2) ignored the party's request for clarification and guidance regarding the information the Court is seeking; (3) during the hearing did not ask Ms. LaPray or Backertop's counsel a single question relating to the singularly germane issue of whether Backertop received funding on a recourse or non-recourse basis; (4) asked questions entirely unrelated to Backertop's compliance with the third party funding order and without providing prior notice to Backertop, in the manner of a prosecuting attorney interrogating an adverse witness, to gather testimonial evidence in attempt to the validate the Court's concerns of "fraud on the court" raised in a "parallel proceeding;" (5) denied Ms. LaPray the opportunity to consult with counsel before answering a leading question posed by the Court; and (6) overruled Backertop's counsel's objection regarding privilege when asking about Ms. LaPray's preparation for the hearing itself.

In the name of inherent authority, the Court requested privileged documents from Backertop, not for the purpose of determining whether such documents were privileged, but in furtherance of its own inquisitorial proceeding.  The Court issued the Production Order after Backertop's managing member testified that she relied on and has given Mavexar full authority in negotiations to retain counsel, relies on Mavexar and counsel regarding the merits of claims

16

brought in lawsuits and reviewing complaints, and relies on Mavexar to negotiate settlement agreements. D.I. 24 at 22:3 -24:2; *Id.* at 33:25 – 34:24. In another hearing for the ostensible purpose regarding attorney motions to withdraw, the Court (1) again asked questions unrelated to the noticed topic regarding motions to withdraw; (2) read aloud privileged documents in open court, in direct contradiction to the Court's representations to the Federal Circuit that it would keep such documents *in camera*; (3) did not notify the interrogated attorney, who admitted that he had not reviewed the production set, that the documents had been marked as privileged; and (4) opined that the Court did not believe the documents were privileged without making any such ruling, thereby denying Backertop the opportunity to appeal a ruling on privilege prior to such public disclosure.

Again citing to the Court's view of its overarching inherent authority, the Court had determined that based solely on such inherent authority, it has authority to compel Ms. LaPray, a non-party[5], to travel to Delaware for an in-person hearing, and that Fed. R. Civ. P. 45 did not apply to a district court issuing *sua sponte* an order to compel a person's attendance in court. *But see Racher v. Lusk*, 2016 WL 67799 (W.D. Okla. Jan. 5, 2016) (Court lacks inherent authority to compel a non-party to travel more than 100 miles to attend a hearing, particularly in light of Fed.

---

[5] Delaware law recognizes that an LLC is distinct from its members. *E.g., Wood v. U.S. Bank Nat'l Ass'n,* 246 A.3d 141, 148 (Del. Ch. 2021) ("The Delaware Uniform Limited Liability Act makes clear that an LLC has a separate juridical existence distinct from its members"). This is so even if there is only one member. *Wood v. U.S. Bank National Association*, 246 A.3d 141, 148 (Del. Ch. 2021). *See also Dougherty v. Snyder*, 469 Fed.Appx. 71, 72 (3d Cir, 2012) ("even single-member LLCs have a legal identity separate from their members"). Thus, the fact that Backertop is a party does not make its owner a party. To hale Ms. LaPray into a foreign court, she must have had minimum contacts with the forum state independent of those of the LLC. *Finke v. Pharmasafe, LLC,* 2014 WL 12605650 at *4 (D. N.M. May 9, 2014); *V-E2, LLC v. Callbutton, LLC*, 2012 WL 6108245 at *3 (W.D. N.C. Dec. 10, 2012).

R. Civ. P. 45(c)(1)[6]).  The Court took it upon itself to contact Ms. LaPray's non-party employer, with apparently no record of that communication, for the stated purpose of having Ms. LaPray's employer explain to Ms. LaPray why she can submit to a court order compelling her to appear in person. Ms. LaPray's objection that she felt harassed and intimidated by the Court's communication with her employer, the Court's communication with her employer damaged her reputation at work and potential employability, the Court's expectation of her employer "explain[ing]" what she could and couldn't do perpetuated traditional gender stereotypes and harassment, and she had limitations due to childrearing responsibilities and financial hardship, all took second priority to the Court's desire to assess "credibility" in furtherance of its inquisitorial proceeding.

Indeed, nothing in the law suggests that the Court can engage in this inquisitorial proceeding by invoking its inherent authority. A judicial claim to an "inherent power" is not to be indulged lightly, for it could lead to overreaching the judicial power actually granted to federal courts by Article III of the Constitution of the United States, and the customs and usages that inform the meaning of that phrase. Such a claim, therefore, must be documented by historical practice. *See, e.g., Miner v. Atlass*, 363 U.S. 641, 643-44 (1960) (rejecting contention that federal court sitting in admiralty has inherent power to order taking of depositions for discovery because there was no historical record of courts ordering such depositions); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-631 (1962) (noting court's inherent power to dismiss suit for failure to prosecute dates to Blackstone's Commentaries and "has long gone unquestioned").

---

[6]  "[T]he exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016).

There is no historical practice in the United States or any irrefutable showing to support inherent authority of a judge to appoint himself or herself as both investigator and adjudicator in subsequent proceedings. *See, e.g., Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987) (court has inherent authority to appoint a private attorney to prosecute contempts). While a court has inherent authority to address fraud on the court, the usual safeguards of adversary proceedings must be maintained. *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (U.S. 1946).

The actions of the Court lack the hallmarks of an adversarial proceeding, and violate Due Process. This proceeding is transparently invalid, as is the Order requiring Ms. LaPray to come to Delaware. For these reasons, Backertop and Ms. LaPray respectfully decline to participate further.

## II.   THE COURT HAS FAILED TO PROTECT THE RIGHTS OF PLAINTIFF AND MS. LAPRAY.

This Court has stated that it is investigating whether there has been a violation of the Court's Standing Order Regarding Disclosure Statements Required by Federal Rule of Civil Procedure 7.1 and Standing Order Regarding Third Party Litigation Funding Arrangements. In the Production Order, the Court has raised concerns about fraud on the Court. Backertop and Ms. LaPray strenuously deny that there was any fraud on the Court. But they respectfully point out to the Court that fraud on the Court can form the basis of a sanction of criminal contempt. *E.g., United States v. Williams,* 622 F.2d 830, 838 (5th Cir.1980) (noting that "[t]he defendants in Pendergast perpetrated a fraud on the court, punishable as criminal contempt"); *Cobell v. Norton*, 334 F.3d 1128, (D.C. Cir. 2003) ("We have been unable to find any authority for, let alone any reason to believe, the proposition that fraud on the court constitutes a civil contempt. We therefore treat the district court's contempt citations on specifications two through five as criminal in nature").

"Criminal contempt is a crime in the ordinary sense, and criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Mine Workers v. Bagwell,* 512 U.S. 821, 825 (1994) (citations and internal quotation marks omitted). *See also Gompers v. Bucks Stove & Range Co*., 221 U.S. 418, 444 (1911) (finding that a criminal contempt defendant has a guarantee against self-incrimination, presumption of innocence, and proof beyond a reasonable doubt); *Cooke v. United States*, 267 U.S. 517, 537 (1925) (notice of charges, assistance of counsel, and right to present a defense); *In re Oliver*, 333 U.S. 257, 278 (1948) (public trial); *United States v. Dixon*, 509 U.S. 688, 696 (1993) (double jeopardy).

This Court has been compelling Backertop and Ms. LaPray to provide testimonial and documentary evidence without advising them of their rights in the face of a possible criminal prosecution. *See, e.g., Dartez v. Peters*, 759 Fed. Appx. 684, 693 (10th Cir. 2018). As such, this action is transparently invalid. For these reasons, Backertop and Ms. LaPray respectfully decline to participate further.

Respectfully submitted,

/s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th floor
Wilmington, DE  19801-1186
(302) 573-2525
dfinger@delawgroup.com
Attorney for Plaintiff Backertop Licensing
LLC and non-party Lori LaPray

Dated:  July 12, 2023

20