IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BACKERTOP LICENSING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-572-CFC |
| | ) | |
| CANARY CONNECT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| BACKERTOP LICENSING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-573-CFC |
| | ) | |
| AUGUST HOME, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM ORDER

Pending before me is nonparty Lori LaPray's motion to stay my August 21, 2023 Order pending Plaintiff Backertop Licensing LLC and Ms. LaPray's appeal of the Order. No. 22-572, D.I. 60.[1] In the Order, I held Ms. LaPray in civil contempt for refusing to appear in person in this Court and fined her $200 for each day the Court is open and she does not appear in person. D.I. 57. Backertop and

---

[1] The relevant pleadings and Court orders and opinions in these two actions are identical. Accordingly, for ease of reading, I cite only to the docket of No. 22-572.

Ms. LaPray jointly filed with the Federal Circuit a Notice of Appeal of the Order on August 31, 2023. D.I. 59. Later that day, Ms. LaPray filed the pending motion.

In deciding whether to grant a stay of an order pending an appeal, district courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

With respect to the first factor, Ms. LaPray has not made a strong showing that she is likely to succeed in her appeal. Ms. LaPray says that she "has a convincing argument" that "in light of Fed. R. Civ. P. 45(c), th[is] Court lacks inherent authority to compel a non-party witness who lives more than one hundred miles away to appear" in person in a court proceeding. D.I. 60 at 2. As an initial matter, this argument was forfeited because it was first presented in Backertop's motion for reconsideration (D.I. 40-1 at 11-12) and Ms. LaPray does not argue, let alone demonstrate, that good cause existed for Backertop's failure to raise the argument earlier. *See Confer v. Custom Eng'g Co.*, 952 F.2d 41, 44 (3d Cir. 1991) (noting that the district court "exercised sound discretion" in deeming arguments

waived that litigant had brought in a motion for reconsideration, but not in the original summary judgment papers).

In any event, as I explained in my July 10, 2023 Memorandum Opinion, the text of Rule 45 does not support Ms. LaPray's reading of the rule, and her interpretation of the rule would effectively strip a district court of its ability to exercise its inherent powers over corporate parties that are owned and operated by a single individual who does not reside within the state of the court's location or within 100 miles of that location.[2] Rule 45(c) in no way limits a court's inherent

---

[2] Rule 45(c) provides that a subpoena issued pursuant to Rule 45(a)

> may command a person to attend a trial, hearing, or deposition only as follows:
>
> (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
>
> (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
>
> > (i) is a party or a party's officer; or
> >
> > (ii) is commanded to attend a trial and would not incur substantial expense.

Fed. R. Civ. P. 45(c).

3

power to issue an order compelling the attendance of a party's principals at a hearing.

> [N]othing in Rule 45(c) or any other part of Rule 45 requires a district judge to issue a subpoena to compel a person's attendance in court. And, more to the point here: Nothing in Rule 45 prohibits a district judge from issuing an order to compel a person's attendance in court.
>
> Rule 45(c) merely prescribes geographic limits on subpoenas issued pursuant to Rule 45(a). Under Rule 45(c)(1)(B)(i), for example, a subpoena issued under Rule 45(a) to a party or a party's officer "may command a person to attend a trial, hearing, or deposition only . . . within the state where the person resides, is employed, or regularly transacts business in person." Rule 45(a), for its part, authorizes the clerk of the court and attorneys authorized to practice in the court—but not the court itself—to issue subpoenas. See FED. R. CIV. P. 45(a)(3) ("*Issued by Whom*. The clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it. That party must complete it before service. An attorney also may issue and sign a subpoena if the attorney is authorized to practice in the issuing court." (emphasis in original)). While subpoenas issue *from* the court where the action is pending, they are neither issued nor instigated *by* the court. *Compare* FED. R. CIV. P. 45(a)(2) ("*Issuing Court*. A subpoena must issue *from* the court where the action is pending." (second emphasis added)) *with* FED. R. CIV. P. 45(a)(3). Thus, Rule 45 does not limit in any way the inherent power of a district judge to issue *sua sponte* an order compelling the attendance of a witness at a hearing; it limits only the power of a court to enforce a subpoena that was issued either by the clerk of the court at the request of a party or by an attorney authorized to practice in that court.

4

> Backertop's reading of Rule 45 is not only at odds with the Rule's text, but in countless cases it would also severely hamper if not nullify a court's inherent powers—"powers which cannot be dispensed with in a Court," *Chambers [v. NASCO, Inc.]*, 501 U.S. [32, 43 (1991)], (internal quotation marks and citations omitted). A corporate party can act only through natural persons. But under Backertop's theory, if no representative of a corporate party lives, works, or conducts in-person business in the state where the court is located, then the judge has no power to call into court a natural person to speak for that party on any topic, including alleged litigation misconduct by the corporate party.
>
> The facts of these cases illustrate the absurdity of Backertop's position. According to Ms. LaPray, Backertop has no employees, no bank accounts, and no assets other than the patents asserted in these cases. Ms. LaPray also says that she is Backertop's sole owner and managing member. Last year, Backertop filed at least 12 patent infringement cases in United States District Courts. Three of those cases were filed in Texas. The nine remaining cases were filed in district courts located in Delaware, New York, Colorado, and California; but under Backertop's theory, Ms. LaPray can never be compelled to attend a hearing in these district courts even though she is the only natural person through whom Backertop can act.

D.I. 45 at 3–8 (footnote and some citations omitted). For these reasons, I think it unlikely that Backertop and Ms. LaPray will prevail in their appeal. Indeed, were Ms. LaPray's reading of Rule 45 to be adopted by the Federal Circuit, a resident of Hawaii (which is more than 100 miles from any other federal judicial district) could form a shell LLC, give the LLC no assets except for a questionable patent,

5

assert the patent in frivolous infringement lawsuits filed under the LLC's name in the other 93 federal judicial districts, and have the LLC engage in fraudulent and sanctionable conduct through the course of those suits with impunity.

With respect to the second factor, Ms. LaPray argues that "[a]bsent a stay, she will be forced to either (i) abandon her appellate rights . . . or (ii) continue her appeal and risk financial distress . . . ." D.I. 60 at 5. But as Ms. LaPray herself admits, civil contempt by nature is "a coercive sanction." D.I. 60 at 6. "[S]anctions in civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Loc. 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421, 443 (1986) (internal quotation marks and citation omitted). In this case, there is no complainant; the sole purpose of the fine I have imposed is to coerce Ms. LaPray into complying with my earlier orders. Ms. LaPray can purge her contempt and avoid paying the fine by simply appearing in court as ordered. In other words, Ms. LaPray need not suffer any injury—let alone an irreparable injury.

Although the "paradigmatic coercive, civil contempt sanction" is to imprison the contemnor, *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994), I elected to impose a fine here, *see id.* at 829 ("A close analogy to

6

coercive imprisonment is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order. Like civil imprisonment, such fines exert a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged."). I explained in my August 21, 2023 Memorandum Opinion how I came to settle on a fine amount of $200 per day fine, D.I. 56 at 13–14, and I will not repeat that discussion here. I note, however, that even though I expressly asked Backertop and Ms. LaPray's attorney at the August 1, 2023 show-cause hearing for information about Ms. LaPray's financial resources, D.I. 55 at 4–5, to this day counsel has never offered any specific evidence (or even unsworn assertions) about Ms. LaPray's assets or income. The conclusory statement in Ms. LaPray's June 7, 2023 affidavit that she would suffer "financial hardship" if forced to travel to Delaware, D.I. 40-3 at 2, and the similarly conclusory assertion in the pending motion that Ms. LaPray will suffer "financial distress" in the absence of a stay, D.I. 60 at 5, do not persuade me that the $200 daily fine amount is unfair.[3]

---

[3] Ms. LaPray's counsel states in a footnote of the pending motion that the fine "is now particularly onerous since [Ms. LaPray's] husband passed away suddenly last week, leaving her as the sole support of her two children." D.I. 60 at 6 n.6. I am sorry for Ms. LaPray's loss, and had counsel asked for a hearing date to be set but delayed so that Ms. LaPray could attend to her family's immediate circumstances, I would have readily granted that request.

7

With respect to the third factor, Ms. LaPray argues, and I agree, that no other party in the cases will be injured by a stay.

Finally, with respect to the fourth factor, quoting a footnote from *American Telephone & Telegraph Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994), Ms. LaPray argues: "As a practical matter, if a [contemnor] demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the [contemnor]." D.I. 60 at 6 (alterations in the original). Putting aside the fact that Ms. LaPray has not demonstrated that she will likely succeed in her appeal or that she will suffer an irreparable injury absent a stay, the Court in *Winback* was addressing a request for a preliminary injunction, not a request for a stay, and—critically—not a request for a stay of a civil contempt order. There was no "contemnor" in *Winback*. In this case (indeed, in all civil contempt cases) a vital public interest—compliance with lawful court orders—is served by the challenged order.

In sum, of the four factors courts consider in evaluating the merits of a stay request, one is neutral and three weigh heavily against granting a stay.

NOW THEREFORE, at Wilmington on this Third day of October in 2023, it is HEREBY ORDERED that the Motion of Non-party Lori LaPray for A Stay

8

Pending Appeal of The Contempt Citation and Its Underlying Order (D.I. 60) is

DENIED.

                                                            _____
                                                                 CHIEF JUDGE